# United States Court of Appeals

*for the*

# First Circuit

Case No. 22-1696

BONNIE DIXON-TRIBOU,

*Plaintiff-Appellant*,

v.

DENIS RICHARD MCDONOUGH,

Secretary, U.S. Department of Veterans Affairs,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
OF MAINE, PORTLAND IN CASE NO. 2:20-CV-00379-NT

## CORRECTED BRIEF FOR PLAINTIFF-APPELLANT

ROBERT F. STONE
LAW OFFICE OF ROBERT F. STONE
*Attorneys for Plaintiff-Appellant*
PO Box 183
South Deerfield, Massachusetts 01373
(413) 369-4421

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................ iii

REASONS WHY ORAL ARGUMENT SHOULD NOT BE HEARD .................. 1

JURISDICTIONAL STATEMENT ....................................................... 2

STATEMENT OF ISSUES ................................................................ 2

STATEMENT OF THE CASE ............................................................ 5

      Factual Background ................................................................ 7

      Failure to Reasonably Accommodate ........................................ 8

      *RAC Cochran*'s Admission on Behalf of the VA ........................... 12

      *RAC Cochran*'s Misstated Medical Opinion is a Material Fact ......... 13

      Pre-removal failure to accommodate ........................................ 15

      Ms. Dixon Tribou's Request for Equal Employment Opportunity (EEO) Counseling ................................................................. 16

      Removal followed Ms. Dixon-Tribou's Formal Complaint ............... 17

      Ms. Dixon-Tribou's Post Removal Actions ................................ 18

      The District Court's Action .................................................... 19

SUMMARY OF THE ARGUMENT ..................................................... 22

STANDARD OF REVIEW ................................................................ 25

ARGUMENT ............................................................................... 26

      I.      THE COURT ERRED IN ASSUMING IT HAD JURISDICTION TO ALLOW DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT MOTION AND DENY PLAINTIFF'S ................................................ 26

            A.      The Court failed its first duty to determine if it had subject-matter jurisdiction before allowing Defendant's CMSJ ......................................... 28

i

1.   The VA lacks standing to challenge OPM's
     reversal of its suitably determination and
     removal of Ms. Dixon-Tribou .......................................31

2.   Review of OPM's disability findings was
     prohibited by statute ......................................................33

3.   The Court's claim Ms. Dixon-Tribou did not ask
     it to Review OPM's decision on disability does
     not apply ..........................................................................34

II.   THE COURT MISINTERPRETED LAW AND FACTS
      WHEN IT GRANTED DEFENDANT'S MOTION FOR
      SUMMARY JUDGMENT...................................................35

      A.   There is conflicting witness testimony concerning Ms.
           Dixon-Tribou's reasonable accommodations ...........................37

           1.   The conflict in *RAC Cochran*'s and *Dr. Lash*'s
                expert medical opinion is a question of material
                fact for a jury .................................................................38

      B.   The Court overlooked evidence that supported full-
           time telework...................................................................41

      C.   Ms. Dixon-Tribou did not ignore her disciplinary
           record.................................................................................42

      D.   The Court's claim Ms. Dixon-Tribou failed to respond
           to other claims is misplaced ......................................................44

CONCLUSION .........................................................................45

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases:**

*Alston v. OPM*,
   527 F. App'x 872 (Fed. Cir. 2013)................................................................ 20, 21

*Amiriantz v. New Jersey*,
   No. 06-1743, 2006 U.S. Dist. LEXIS 86546, 2006 WL 3486814
   (D.N.J. Nov. 16, 2006)........................................................................... 29, 30

*Beall v. Office of Personnel Mgt.*,
   95-3500, 1995 U.S. App. LEXIS  27129 (Fed. Cir. Sep. 20, 1995)....................27

*Black v. OPM*,
   250 F. App'x 343 (Fed. Cir. 2007)............................................................ 21, 36

*Casas Office Machs. v. Mita Copystar Am.*,
   42 F.3d 668 (1st Cir. 1994)................................................................. *passim*

*Cronin v. United States Postal Serv.*,
   2022 MSPB LEXIS 1897, *16-19, 2022 M.S.P.B. 13 ........................................32

*Deerinwater v. Office of Pers. Mgmt.*,
   78 F.3d 570 (Fed. Cir. 1996) ................................................................18

*Eisenbeiser v. Chertoff*,
   448 F. Supp. 2d 106 (D.D.C. 2006)............................................................ 28, 34

*Grayton v. OPM*,
   136 F. App'x 364 (Fed. Cir. 2005)............................................................ 19, 25

*Jones v. Walgreen Co.*,
   679 F.3d 9 (1st Cir. 2012)...................................................................25

*King v. OPM*,
   2009 M.S.P.B. 210, P13, 112 M.S.P.R. 522......................................................33

*Lindahl v. Office of Personnel Mgt.*,
   470 U.S. 768 (1985)............................................................................23

*Luminent Mtge. Capital, Inc. v. Merrill Lynch & Co.*,
   652 F. Supp. 2d 576 (E.D. Pa. 2009)........................................................... 29, 30

*Mancini v. City of Providence*,
   909 F.3d 32 (1st Cir. 2018)...................................................................25

*Rivera-Rivera v. Medina & Medina, Inc.*,
  898 F.3d 77 (1st Cir. 2018) ..................................................................12

*Rodriguez v. United States*,
  852 F.3d 67 (1st Cir. 2017) ............................................................ 23, 36

*Scott v. Harris*,
  550 U.S. 372 (2007) ...........................................................................26

*Seigla v. Smithsonian Inst.*,
  62 M.S.P.R. 55 ...................................................................................31

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83,118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998),
  *aff'd*, 251 Fed. App'x 787 (3d Cir.2007) ........................................ 29, 30

*Thompson v. United States*,
  291 F.2d 67 (10th Cir. 1961) ......................................................... 29, 30

*Thompson v. OPM*,
  208 F. App'x 937 (Fed. Cir. 2006) .....................................................27

## Statutes & Other Authorities:

5 U.S.C. § 8331 .....................................................................................27

5 U.S.C. § 8331(9) .................................................................................27

5 U.S.C. § 8347 .....................................................................................34

5 U.S.C. § 8347(b) .................................................................................23

5 U.S.C. § 8347(c) ........................................................................... *passim*

5 U.S.C. § 8401 ............................................................................... *passim*

5 U.S.C. § 8401(2) .................................................................................27

5 U.S.C. § 8461 ............................................................................... *passim*

5 U.S.C. § 8461(c) ........................................................................... 23, 25

5 U.S.C. § 8461(d) ........................................................................... *passim*

28 U.S.C. §1291 ......................................................................................2

28 U.S.C. §1331 ......................................................................................2

42 U.S.C. § 12112(5)(A)................................................................17

5 C.F.R. § 731.103 ......................................................................32

5 C.F.R. § 844.103(a)(2) ......................................................... *passim*

5 C.F.R. § 844.103(a)(4) ..........................................................5, 6

5 C.F.R. § 844.201(a)(1) ..............................................................23

5 C.F.R. § 844.201(a)(2) ..............................................................23

5 C.F.R. § 844.202(b)(1) ....................................................... 32, 33

29 C.F.R. § 1614.105(a)................................................................17

29 C.F.R. § 1614.108 ....................................................................17

29 C.F.R. § 1614.203 ....................................................................15

29 C.F.R. § 1630.2(m) ....................................................................8

87 FR 76569 ..................................................................................32

87 FR 76816 ..................................................................................32

Fed. Rule Evid. 80 ...........................................................................1

Public Law 117-214 ......................................................................27

Public Law 117-262 ......................................................................23

VA Handbook A Handbook 5971.1, p. 19, ECF No. 55-13 ......................8

VA Handbook  5975.1 ....................................................................10

No. 22-1696

_____

# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

_____

Bonnie Dixon-Tribou,

*Plaintiff-Appellant*,

v.

**DENIS RICHARD MCDONOUGH, Secretary, U.S. Department of Veterans Affairs; DEPARTMENT OF VETERANS AFFAIRS,**

*Defendants-Appellees*.

_____

**On Appeal from the United States District Court
for the District of Maine
No. 20-cv-00379 (Hon. Nancy Torresen)**

_____

**OPENING BRIEF OF APPELLANT**

## <u>REASONS WHY ORAL ARGUMENT SHOULD NOT BE HEARD</u>

Oral argument would not aid the Court in this case. This appeal is based on statute and admissible material evidence pursuant to an internal investigation by the U.S. department of Veterans Affairs. Fed. Rule Evid. 80?  However, Plaintiff-Appellant will not object to oral argument if requested by VA.

## JURISDICTIONAL STATEMENT

The United States Court for the District of Maine (Court) had subject-matter jurisdiction under 28 .S.C. § 1331 because plaintiff's claims arise under federal law. The court entered final judgment on July 13, 2022. Addendum ("A ?"). Plaintiff-Appellant Bonnie Dixon-Tribou timely appealed on June 30, 2021. Joint Appendix ("J ?") 5-6. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF ISSUES

Ms. Dixon-Tribou is a qualified person with a disability. Until January 11, 2015, her disability was accommodated with a permanent assignment in the Quality Management Department (QMD) of the Togus, Maine, Veterans Administration Medical Center (VAMC). The QMD was located in an office with central air-conditioning reasonably able to accommodate Ms. Dixon-Tribou with the 71° Fahrenheit or lower temperature necessary to accommodate her disabling multiple sclerosis (MS). Her office also provided the privacy needed to properly attend to her sugar diabetes (SD).

However, the Record shows she unilaterally transferred to a position in the VAMC Community Care Department (CCD) in January 11, 2015, to a VAMC Department without central air-conditioned offices and the VA was unable to reasonably accommodate her MS. As a result, Ms. Dixon-Tribou's work performance was negatively affected by the lack of reasonable accommodation for

her MS. The VA falsely accused her of dishonesty in the performance of her work duties that were, in fact, due to the negative effects of her unaccommodated MS.[1]

Based on the dishonesty allegations, the VA removed Ms. Dixon-Tribou from federal service on December 12, 2016.[2]  In January 2017, Ms. Dixon-Tribou filed for disability retirement with the Office of Personnel Management (OPM) to appeal her removal on the basis that she was removed because she was a disabled person who was not reasonably accommodated.  The VA objected to Ms. Dixon-Tribou's retirement appeal and based on the VA's charges of dishonest work practices it was initially denied.  Her July 2, 2018, request for reconsideration was also denied by OPM on March 25, 2019.

On April 22, 2019, Ms. Dixon-Tribou appealed her removal to the Merit Systems Board (MSPB), which was accepted.  On May 14, 2019 OPM notified the MSPB it had reviewed Ms. Dixon-Tribou Record and determined she had submitted sufficient evidence to be entitled to FERS disability retirement.  To find her entitled to disability retirement OPM first had to make a determination on disability.  It had to consider all the evidence in her record including the VA's charges of work dishonesty. It had to determine the VA's charges were without merit and she was in a position where she could not be reasonably accommodated.

---

[1] Removal Letter from Alfred A. Montoya, Jr., Center Director, White River Junction, Vermont (Nov. 3, 2016). A 1; ECF No. 64, Pages ID# 2868.

[2] MSPB Appeal PH-844E-19-0223-I-1, Docket No. 64, Page ID#: 2893. A2.

She prevailed in her appeal and, on May 14, 2019, OPM notified the MSPB that Ms. Dixon-Tribou was entitled to disability retirement under FERS. It issued a new Final Agency Decision (FAD) awarding Ms. Dixon-Tribou FERS disability retirement. OPM's determination on her disability was final and conclusive. However, the VA refuses to acknowledge OPM and the MSPB decision the she is entitled to disparity retirement because she was not reasonably accommodated OPM determinations on disability are final and conclusive and not subject to review.[3] Therefore, the issues before this Court are:

1.  Did the District Court err when it allowed Defendant/Appellee Denis Richard McDonough, Secretary, U. S. Department of Veterans Affairs ("VA") to raise the same issues of disability in in defense of Ms. Dixon-Tribou's removal unsuccessfully argued before OPM.

2.  Was the District Court, when it reviewed and rejected the factual underpinnings of OPM's disability determination of Ms. Dixon-Tribou's disability to allow the VA's (CMSJ), in violation of 5 U.S.C. §§ 8347(c) and 8461(d)?

3.  Did the District Court err when it denied Ms. Dixon-Tribou's CMSJ in light of unopposed Record evidence that the VA violated the Rehabilitation Act?

---

[3] The Office shall determine questions of disability and dependency arising under the provisions of this chapter [5 USCS §§ 8401 et seq.] administered by the Office. Except to the extent provided under subsection (e), the decisions of the Office concerning these matters are final and conclusive and are not subject to review. 5 U.S.C.S. § 8461 (October 19, 2022)

4

4.      Was the District Court correct when it held the standard of
review of 5 U.S.C. §§ 8347(c) and 8461(d) separate and distinct?

**STATEMENT OF THE CASE**

In the instant case, the VA argues facts because the law is against it.

However, Ms. Dixon-Tribou argues both facts and law as both are on her side.

Indeed, the District Court overlooked the VA's numerous acts of discrimination in

violation of the Rehabilitation Act documented in unopposed Record evidence, to

justify  summary judgment.  To justify its summary judgment for the VA,  the

District Court relied heavily Ms. Dixon-Tribou's disciplinary record work

deficiencies caused by lack of reasonable accommodations in a position the VA

unilaterally placed her in on January 11, 2015.

On May 14, 2016, OPM found Ms. Dixon-Tribou's discipline

unpersuasive when it determined she was entitled to FERS disability retirement

from the position the VA had reassigned her to in January 2015.  Indeed, as

acknowledged by the Court, OPM could not have found Ms. Dixon-Tribou entitled

to disability retirement if her alleged work and attendance deficiencies were not

caused by her unaccommodated disabling MS and SD.[4]  Regardless, the District

Court overlooked the OPM's disability determination that Ms. Dixon-Tribou was

---

[4] First, the applicant must "have become disabled because of a medical condition, resulting in a deficiency in performance, conduct, or attendance, or if there is no such deficiency, the disabling medical condition must be incompatible with either useful and efficient service or retention in the position." 5 C.F.R. § 844.103(a)(2). second, the "[a]ccommodation of the disabling medical condition in the position held must be unreasonable." §844.103(a)(4).  JA 3; ECF No. 82, Page ID#: 3101.

disabled per requirement of § 844.103(a)(2) and (4) and embraced and allowed the VA's CMSJ of work discrepancies due to dishonesty.

In addition to allowing the VA's CMSJ on claims of work discrepancies found unpersuasive by OPM, the District Court overlooked numerous acts of prohibited disability discrimination by VA documented in the Record. They included, but were not limited to,: 1) transferring Ms. Dixon-Tribou from a permanent accommodated position to one OPM determined where she could not be reasonably accommodated;  2) repeatedly ignoring Ms. Dixon-Tribou's reasonable accommodation  requests for full-time telework; 3) failure to engage Ms. Dixon-Tribou in interactive discussions relating to her accommodations after the VA realized it could not reasonably accommodate her MS; and 4) the District Court rejected OPM's findings on the factual underpinnings of Ms. Dixon-Tribou's disabling MS and SD in violation of OPM's final and conclusive decision  on her disabilities in violation of §§ 8347(c) and 8461(d) as further explained herein.

5)    The District Court erred when it held OPM was not acting in a judicial capacity.[5]

---

[5] Plaintiff points to no evidence in the Record that OPM acted in such a capacity. Def.'s Mem. of Law in Opp'n to Pl.'s Mot. for *Summ. J.* 17. A 4, ECF No. 82, Page ID's #: 3102, ¶ 3, 3103, ¶ 1.

## Factual Background

It is undisputed Ms. Dixon-Tribou was first employed at the Togus, Maine, Department of Veterans Affairs Medical Center (VAMC) in May of 2006 as a floor nurse.  It is undisputed that in June of 2007 Ms. Dixon-Tribou was promoted to ward charge nurse based on outstanding performance.  With her promotion, Ms. Dixon-Tribou received an in-step pay increase due to her excellent performance. In November 2007, Ms. Dixon-Tribou was assaulted by an inpatient at the VAMC and she sustained injuries to her shoulder and spine (upper neck).  The VAMC treated her injuries but did not x-ray them until August 2008 due to pregnancy.

When x-rays were taken, the VAMC treating physician found Ms. Dixon-Tribou had developed multiple sclerosis (MS).  Due to the MS diagnosis, the VA reasonably accommodated her with placement in the VAMC Chief Nurse's Quality Management Department (QMD) office suites. The QMD offices had central air-conditioning and could usually meet the 71º Fahrenheit temperature requirement to reasonably accommodate Ms. Dixon-Tribou's MS.  The QMD position was made permanent on May 6, 2011[6] which proved she was a qualified individual with a disability.[7]

---

[6] A Permanent Reassignment Job Offer to accommodate MS and acceptance.  ECF No. 64, Page ID # 2878.  A 5.

[7] The term "qualified individual with a disability," with respect to employment is defined as a disabled person who, with or without a reasonable accommodation,

## Failure to Reasonably Accommodate

On January 11, 2015, Ms. Dixon-Tribou was unilaterally transferred from QMD to the Non-VA Care Unit, later renamed the Community Care Department (CCD),[8] to perform similar administrative duties.  It was winter in Maine when she was transferred to an office area without central air-conditioning.  In June 2015, the arrival of summer heat made it apparent Ms. Dixon-Tribou's office room temperature could not be maintained at 71° Fahrenheit or below to reasonably accommodate her MS, forcing her to request full-time telework as a reasonable accommodation.

Ms. Dixon-Tribou's accommodation requests were not considered, and were was replaced with moves to offices without central air-conditioning in old buildings that could not be adequately cooled with window units even though telework was compatible with her administrative duties.  VA Handbook 5971.1 states the Department of Veterans Affairs (VA) considers **"[t]elework for an office employee who has multiple sclerosis and is fatigued by the commute" a reasonable accommodation."**[9]  However, Ms. Dixon-Tribou's accommodation

---

can perform the essential functions of the position held or desired. 29 C.F.R. § 1630.2(m). *Sallie M. v. DeJoy,* 2022 EEOPUB LEXIS 1702, *6, 122 FEOR (LRP) 292, EEOC (IHS) 2020005227 (E.E.O.C. May 11, 2022)

[8] A 6. ECF No. 82, Page ID#:3085, ¶ 3.

[9] A 7. VA Handbook A Handbook 5971.1, p. 19, ECF No. 55-13, Page ID #: 1357

was not addressed within 30 days as required,[10] in fact her June 2015 telework

accommodation request was not addressed for months before it was denied.

Upon transfer to CCD, Ms. Dixon-Tribou made a verbal request for full-time

telework and made a written request in June 2015.   She explained to management

how her MS symptoms were exacerbated without the requested reasonable

accommodations and the effects of her MS on her job performance.  She testified

**"she could not work to her full potential because of the elevated temperatures

and *Corey Vail* was made aware that the increased temperatures caused

cognitive deficits and fatigue due to her condition"**[11] and she repeatedly

informed *Vail* she could work better from home.  *Vail* testified "**I don't recall her

making any requests or specifically mentioning to me that she wanted to

telework five days per week. On approximately three occasions, she stated

that it would be better for her if she could work from home.**"[12]  Then,

following the denial of her telework accommodation request, Ms. Dixon-Tribou

---

[10] All requests for accommodation should be processed as expeditiously as feasible. Requests from applicants should be expedited and processed within ten (10) calendar days. Requests from employees should ordinarily be processed within thirty (30) calendar days, not counting the time waiting for medical documentation.   A 5; *also see* ECF No. 55-15, Page ID: 1358.

[11] ECF No. 55-13, Page ID: 1077.

[12] ECF No. 55-13, Page ID: 1047.

repeatedly informed *Vail* of the effects of her unaccommodated MS on her work

performance and telework from home would enable her to do her job better.

Ms. Dixon-Tribou continued to make repeated verbal requests for full-time

telework and believed they were sufficient, as accommodation requests do not

have to be written. "A requestor does not have to use words such as "reasonable

accommodation," "disability," or "Rehabilitation Act"[13] in the request, and:

> **Additionally, an employee may request a reasonable accommodation whenever he or she chooses, even if he or she has not previously disclosed the existence of a disability. The requestor should not be required to make repetitive requests for the same accommodation. In such cases, the supervisor or manager and the requestor should work together to anticipate any situations that may require recurring accommodation (e.g., sign language interpreters or large print documents).**[14]

Regardless, even though the VA's disregard of her accommodation requests

violated VA policy and, possibly, the Rehabilitation Act, the District Court

overlooked *Reasonable Accommodation Coordinator Denis Cochran's ("RAC*

*Cochran")* admission that **"[Dixon-Tribou's] request for full-time telework was**

**not considered before she was removed."**[15]  The District Court justified

overlooking Ms. Dixon-Tribou's numerous earlier accommodations requests by

---

[13] *Id.*

[14] A 8, p. 20, ¶ b; VA Handbook 5975.1; *also see* ECF No. 55-15, Page ID: 1358, ¶ b.

[15] A 9; ECF No. 55-13, Page ID#'s: 1117-1118.

holding she filed a request after the VA notified her of her proposed removal and it was still considering this request when she was terminated.[16]

Additionally, the District Court held the VA's medical expert VAMC *Assistant Chief of Staff Dr. Ray E. Lash, M.D. ("Dr. Lash")* had agreed to a six month trial period of 2 days telework to reasonably accommodate Ms. Dixon-Tribou's MS which was in place when she was removed.[17]  That was incorrect; *Dr. Lash* did not agree to a six-month 2-day telework trial period to accommodate Ms. Dixon-Tribou's MS.  The Record proves *Dr. Lash* testified that **"one could make a reasonable case to consider a trial of strict home temperature control as a means of managing her symptoms and ability to function in her work[,][18] [**and] **I don't recall specifically who made the recommendation that the Complainant [Ms. Dixon-Tribou] be approved to telework two days per week,**

---

[16]  Then, although Ms. Dixon-Tribou made another request for full-time telework—within days of receiving a letter notifying her that she was being considered for termination—the VA was still considering this request when Mr. Montoya sustained the proposed removal and Ms. Dixon-Tribou was terminated.. A 7, Order on CMSJ, pp. 31-32; ECF No. 82, Page IDs: 3113-3114.

[17] Upon receiving that recommendation, Mr. Cochran and Dr. Lash decided to allow Ms. Dixon-Tribou to telework twice per week as needed on a six-month trial basis. This was a reasonable attempt at an accommodation, particularly in light of Ms. Dixon-Tribou's historical difficulties with focusing on her work.  A 8; Order on CMSJ, p. 32;  ECF no.82, Page ID#: 3118, ¶ 2.

[18] ROI pp 65 & 107

instead of five. **I'm pretty sure that I did not say "Five days is not reasonable. Why don't you try two?"[19]**

The conflicting statements of *Dr. Lash* and *RAC Cochran* created a genuine question of material fact that should have been put before a jury, not decided in a motion for summary judgment, as where genuine issues of dispute of material facts exist, such disputes must be resolved by a trier of fact, not by a court on summary judgment.[20]

### *RAC Cochran's* Admission on Behalf of the VA.

As explained above, the Record establishes Ms. Dixon-Tribou continued to verbally request full-time telework after her initial June 2015 request was denied. She continue to make repeated verbal requests after the VA failed in its numerous attempts to accommodate her MS with a cool room temperature of 71° or less.[21] She testified that due to the changing accommodation needs of her MS she needed full-time telework and she reapplied, in writing, for full-time telework on March 4 and September 14, 2016. She testified that:

**on March 4, 2016 and September 14, 2016, her neurologist requested that she telework five days per week. She explained that being**

---

[19] A 9; Dr. Lash Follow-up to Statement to EEO Investigator, ECF No. 55-13, Page ID#: 1121.

[20] *Rivera-Rivera v. Medina & Medina, Inc.,* 898 F.3d 77, 84 (1st Cir. 2018). 2018).

[21] A 10; Dr. Muscat, 14 SEP 2016 Reasonable Accommodation Request for Bonnie Dixon-Tribou, ECF No. 55-14, Page ID #: 1261.

**permitted to telework five days per week would allow her to control the temperature and take her medication that controls her back spasms.**[22]

However, the District Court overlooked repeated verbal accommodation requests, as well as her written March 4, 2016, request overlooked *Cochran's* sworn statement her accommodation request was not considered creditable and her September 14, 2016 request was made out of desperation after she learned of her proposed removal.[23]  That holding shows the District Court viewed the non-movant VA's CMSJ in the light most favorable to it, even though summary judgment "admits no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails"[24].

### *RAC Cochran's* Misstated Medical Opinion is a Material Fact.

**T**he Court found *RAC Cochran* more credible than the expert medical opinion of VAMC *Assistant Chief of Staff Dr. Ray E. Lash, M.D. ("Dr. Lash")* when *RAC Cochran* testified that Ms. Dixon-Tribou's MS was reasonably accommodated with 2- days of telework[25]  *RAC Cochran* incorrectly claimed 2-days of telework accommodated Ms. Dixon-Tribou and was appropriate based on

---

[22] A 11; Corey Vail Statement; ECF No. 55-13, Page ID#: 1074.

[23] A 12; Order on Parties CMSJ; . . . ECF No. 82, Page ID #: 3114, note 24.

[24] Summary judgment 'admits of no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails . . . .' *Greenburg*, 835 F.2d at 936.  *Casas Office Machs. v. Mita Copystar Am.,* 42 F.3d 668, 684 (1st Cir. 1994)

[25] A 13; *RAC Cochran Statement* ECF No. 55-13, Page ID#: 1075, ¶ 1.

*Dr. Lash's* medical opinion.[26]  However, the Record fails to support his testimony.

*Dr. Lash's* medical opinion was "**one could make a reasonable case to consider a trial of strict home temperature control as a means of managing her symptoms and ability to function in her work."[27]**

When *Dr. Lash* was later questioned by the VA's Equal Employment Opportunity (EEO) Investigator as to whether or not he made a recommendation of two (2) days of telework to accommodate Ms. Dixon-Tribou's MS, he testified:

> **I don't recall specifically who made the recommendation that the Complainant be approved to telework two days per week, instead of five. I'm pretty sure that I did not say "Five days is not reasonable. I don't recall specifically who made the recommendation that the Complainant be approved to telework two days per week, instead of five. I'm pretty sure that I did not say "Five days is not reasonable. Why don't you try two?"**[28]

*Dr. Lash* then further qualified his testimony by stating "**That being said, she should be given the benefit of the doubt, and it was reasonable to try it."[29]**

*Dr. Lash's* testimony does not support the VA and *Cochran's* claim he recommended Ms. Dixon-Tribou would be reasonably accommodated if permitted

---

[26] *Id.*

[27] A 8., *Supra,* note 19, Dr. Lash Follow up with EEO Investigator, Expert Medical Opinion.  ECF No. 55-14, Page ID#: 1258; *also see* Ms. Dixon-Tribou's CMSJ ECF No. 64, Page ID#: 2834, ¶ 31.

[28] A 8;, *Dr. Lash's* Follow up with EEO Investigator, ECF No. 55-13, Page ID#: 1121.

[29] *Id.*

to telework 2 days and not full-time. Regardless, the District Court made a credibility determination by viewing VA's, the claims in a light favorable to the VA and did not view the evidence and all factual inferences in Ms. Dixon-Tribou's CMSJ in the light most favorable to her.[30]

### Pre-removal failure to accommodate.

The VA and its management, *Vail* and *Cochran,* were aware of Ms. Dixon-Tribou's disabling MS as previously explained.  However, when she made repeated reasonable accommodation requests verbally, and in writing, for full-time telework the VA failed to engage with her in meaningful communication concerning her evolving accommodation needs for her MS as explained above. That failure was a material violation of the Rehabilitation Act as explained in the VA's own management directive. [31]

The VA explained the importance of ongoing interactive meaningful communication with disabled employees in VA Handbook 5975.1.  It states:

> **Ongoing communication and cooperation are important, especially when a specific limitation, problem, or barrier is unclear or when the disability or an effective accommodation is not obvious. Thus,**

---

[30] *Casas Office Machs.* 42 F.3d 668, 670 (1st Cir. 1994)

[31] **(H)** Require that decision makers communicate, early in the interactive process and periodically throughout the process, with individuals who have requested a reasonable accommodation; 29 C.F.R. § 1614.203 (Nov. 28, 2022)

**interactive discussions should be documented, with at least the date, time, participants, and key points noted.[32]**

The Record proves the VA failed to communicate with Ms. Dixon-Tribou in a meaningful manner to meet her need for reasonable accommodation requests on full-time telework.  The lack of cooperation between the parties with inactive communication is corroborated by *Cochran's* affidavit testimony that Ms. Dixon-Tribou's March 4, 2016, or September 14, 2016, requests were not considered before she was terminated.[33]

### Ms. Dixon Tribou's Request for
### Equal Employment Opportunity (EEO) Counseling.

On March 17, 2016, Ms. Dixon-Tribou requested EEO Counseling as she believed her transfer to CCD without accommodations violated the Rehabilitation Act after the VA was unable to reasonably accommodate her.  After her unilateral transfer to the CCD, she began to realize the VA did not believe it could reasonably accommodate her and, most likely, why it failed to prearrange ongoing reasonable accommodations for her disabling MS and SD in her new position in violation the Rehabilitation Act.[34]

---

[32] *Id.*

[33] *Supra,* A 6; ECF No. 55-13, Page ID#'s: 1117-1118.

[34] (A) not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business

The Record proves Ms. Dixon-Tribou contacted an EEO Counselor in a timely manner pursuant to 29 C.F.R. § 1614.105(a) hoping to resolve the VA's continuing failure to accommodate her informally.  However, EEO Counseling was unsuccessful and on June 9, 2016, the EEO Counselor notified Ms. Dixon-Tribou of her right to file a "Formal Complaint of Employment Discrimination" ("Formal Complaint").[35]  On June 22, 2016; she filed a timely Formal Complaint with the VA's Office of Resolution Management ("ORM").[36]

<div align="center">

**Removal followed Ms. Dixon-Tribou's
Formal Complaint.**

</div>

On August 22, 2016, Ms. Dixon-Tribou's Formal Complaint was accepted for investigation[37] pursuant to Equal Employment Opportunity Commission and it was accepted for investigation on August 22, 2016, pursuant to (EEOC) regulation 29 C.F.R. § 1614.108.[38]  In September 2016, the VA made its decision to terminate Ms. Dixon-Tribou.  On December 12, 2016, she was removed from federal service before her March 4, 2016, written and repetitive verbal reasonable

---

of such covered entity[.]  42 U.S.C.S. § 12112 (5)(A) (October 19, 2022)

[35] ECF No. 55-13, Page ID #: 1035 - 1038. **(SUMMARY OF RESOLUTION EFFORTS.**

[36] ECF No. 55-13, Page ID#: 1039 (NOTICE OF RIGHT TO FILE A FORMAL DISCRIMINATION COMPLAINT OF EMPLOYMENT DISCRIMINATION.

[37] ECF No. 55-13, Page No. ID#: 1047.

[38] **(a)** The investigation of complaints shall be conducted by the agency against which the complaint has been filed. Et seq. 29 C.F.R. § 1614.108 (Lexis Advance through the Dec. 30, 2022 issue of the Federal Register)

accommodation requests for full-time telework were considered, and the investigation of her Formal Complaint began.[39]  Indeed, Ms. Dixon-Tribou's complaint was not assigned for investigation until November 30, 2016,[40] 27 days after she received VA's Removal Notice,[41] and the actual investigation of her Formal Complaint did not begin until March 6, 2017, 78 days after her removal.

### Ms. Dixon-Tribou's Post Removal Actions.

Upon removal, Ms. Dixon-Tribou exercised her administrative rights and filed for disability retirement as allowed by statute under the Federal Employees' Retirement System (FERS) with the Office of Personnel Management (OPM) in January 2017.[42]  OPM considered her disability retirement application on the merits of her entire Record with the VA. In her retirement application, Ms. Dixon-Tribou's claimed she was removed from federal service because the VA failed to accommodate her after placing her in a position where she could not be reasonably accommodated, and the resulting work discrepancies were due to her unaccommodated [43] disabling MS and SD.

---

[39] ECF No. 82, Page ID#: 3092, ¶ 3.

[40] ECF No. 55-13, Page No. ID#: 1019

[41] ROI 264

[42] *Deerinwater v. Office of Pers. Mgmt.*, 78 F.3d 570, 573 (Fed. Cir. 1996).

[43] A 2; MSPB Appeal PH-844E-19-0223-I-1, Docket No. 64, Page ID#: 2893. *Supra,* note 2

OPM initially denied Ms. Dixon-Tribou's disability retirement application and her request for reconsideration on March 25, 2019. On April 22, 2019, she appealed her removal to the MSPB. On May 14, 2019, OPM notified the MSPB that it reviewed Ms. Dixon-Tribou's Record and determined she had submitted sufficient documentation to establish her entitlement to disability retirement benefits under the Federal Employees Retirement System (FERS).[44] Ms. Dixon-Tribou's MSPB Appeal was dismissed because OPM determined it moot as she was entitled to disability retirement retroactive to her date of removal, June 12, 2016. Ms. Dixon-Tribou's application for disability retirement was deemed effective retroactive to the date of removal the agency[45] and the removal action canceled in its entirety."

## The District Court's Action

The Court below reviewed and rejected OPM's non-reviewable final and conclusive determination of the effects of Ms. Dixon-Tribou's disabling MS on her work performance even though it was precluded from reviewing the OPM/MSPB decision on physical disability.[46] To be entitled to disability retirement, Ms. Dixon-Tribou had the burden to prove she was in a position where she could not be

---

[44] ECF No: 64, Page ID#: 2887–2893.

[45] *Supra,* note . . . The VA removed Ms. Dixon-Tribou with delegated authority from OPM, OPM was the removing Agency.

[46] *Grayton v. OPM*, 136 F. App'x 364, 365 (Fed. Cir. 2005)

reasonably accommodated[47] pursuant to 5 C.F.R. § 844.103(a)(2). The VA's defense of Ms. Dixon Tribou's removal was based on work discrepancies OPM considered with her disability retirement application it found to be due to unaccommodated MS, her disability retirement was granted.  However, the VA resurrected its unpersuasive work discrepancies argued before OPM and reargued them before the District Court in defense of its removal Ms. Dixon-Tribou.

When OPM allowed Ms. Dixon-Tribou's disability retirement it made a determination on her disability that was final and conclusive and not reviewable Regardless, the District Court reviewed and rejected OPM's factual underpinnings of  decision on her disabling MS in violation of  statute.  Therefore, the VA resurrected the same issues (factual underpinnings) it had unsuccessfully argued before OPM to justify Ms. Dixon-Tribou's removal. Therefore, the District Court lacked jurisdiction to review the OPM/MSPB decision on disability as further explained herein.

The Court below allowed VA's CMSJ base upon its prohibited review of the factual underpinnings of OPM's decision on Ms. Dixon-Tribou's disability even though they were argued unsuccessfully before OPM and the MSPB.  Its review was prohibited by the identical statues, 5 U.S.C. §§ 8347(c) and 8461(d).

To be entitled to FERS disability retirement, Ms. Dixon-Tribou had to prove

---

[47] *Alston v. OPM*, 527 F. App'x 872, 873 (Fed. Cir. 2013)

she was in a position where she could not be reasonably accommodated,[48] and she

met that burden.  OPM's decision that she could not be accommodated[49] was final

and conclusive and not subject to review by the District Court.[50]  But, when this

case reached the District Court on November 11, 2019, the VA resurrected the

defense that Ms. Dixon-Tribou's work deficiencies were due to dishonesty[51] which

the VA argued before OPM and were found invalid;[52] that determination was

upheld by the MSPB on May 14, 2019 which the VA has refused to acknowledge.

---

[48] Applicants bear the burden to prove eligibility for disability retirement under the Federal Employees' Retirement System (FERS).*Alston v. OPM*, 527 F. App'x 872, 873 (Fed. Cir. 2013)

[49] . . . in order to receive a disability annuity, the employee must show that his disability results in a deficiency in performance, conduct, or attendance or is incompatible with useful and efficient service or retention in the position. 5 C.F.R. §844.103(a)(2). *Black v. OPM,* 250 F. App'x 343, 345 (Fed. Cir. 2007)

[50] Under FERS, decisions regarding disability retirement are final and conclusive and are not subject to review. 5 U.S.C.S. § 8461(d).  *Black,*  250 F. App'x 343, 344 (Fed. Cir. 2007)

[51] A 1;  ECF No. 64, Pages ID# 2868. Removal Letter from Alfred A. Montoya, Jr., Center Director, White River Junction, Vermont (Nov. 3, 2016).

[52] ECF No.64, Page ID#: 2860. Upon further review OPM has determined that the appellant has submitted sufficient documentation to establish his entitlement to disability retirement benefits under the Federal Employees Retirement System (FERS).

## SUMMARY OF THE ARGUMENT

This is a case of disability discrimination by Denis Richard McDonough, Secretary, Secretary, U.S. Department of Veterans Affairs (VA), for failure to reasonably accommodate Ms. Dixon-Tribou's known disabling multiple sclerosis (MS). The VA failed to reasonably accommodate Ms. Dixon-Tribou's MS and SD after it he transferred her from an accommodated position, as previously explained, and placed her in a position where she could not be accommodated. It took time for her to realize the VA's so-called reasonable attempts to accommodate were fruitless and a failure to reasonably accommodate her.

The VA's lack of reasonable accommodations resulted in a decline in work performance and attendance by Ms. Dixon-Tribou which the VA labeled dishonesty in the performance of her work duties[53] used to justify her removal. However, prior to her removal Ms. Dixon-Tribou notified VAMC management of the adverse medical effects caused by placing her in a non-accommodated position. She made repeated verbal requests for full-time telework as previously explained and in response the VA, against medical advice, only took insincere and ineffective attempts to make it appear it was meeting her reasonable accommodation requests before her discriminatory removal on December 12, 2016.

---

[53] A 1.

Following her removal, Ms. Dixon-Tribou continued to maintain her removal was due her unaccommodated MS symptoms at work.  On or about February 2017, she filed an application for disability retirement under the Federal Employees Retirement System (FERS) as allowed by statute.[54]  The Office of Personnel Management (OPM) adjudicated her disability application and initially denied it.[55] On April 22, 2019, Ms. Dixon-Tribou appealed OPM's denial to the Merit Systems Protection Board (MSPB) per 5 U.S.C. 8461(d).[56]  On April 14, 2019, she appealed OPM's denial to the MSPB.  On May 14, 2019 the MSPB held, upon further review of the Record by OPM, she had submitted evidence sufficient to establish her entitlement to FERS disability retirement and OPM would be issuing a new Final Agency Decision (FAD) granting her disability retirement.[57]

---

[54] 5 C.F.R. § 844.201(a)(1) and (2) (Nov. 29, 2022).

[55] The statutory regime provides that the (OPM) shall adjudicate all claims regarding retirement benefits. 5 U.S.C.S. § 8347(b); 5 U.S.C.S. § 8461(c). *Rodriguez v. United States,* 852 F.3d 67, 72 (1st Cir. 2017); *also se*e An employee who voluntarily applies for disability retirement seeks to establish title to a benefit granted by law; the OPM is the administrative agency charged under the law with the managerial function of adjudicating disability retirement claims. *Lindahl v. Office of Personnel Mgt.*, 470 U.S. 768, 784-785 (1985)

[56] **(d)** The Office shall determine questions of disability and dependency arising under the provisions of this chapter [5 USCS §§ 8401 et seq.] administered by the Office. Except to the extent provided under subsection (e), the decisions of the Office concerning these matters are final and conclusive and are not subject to review.5 U.S.C.S. § 8461 (LexisNexis, Lexis Advance through Public Law 117-262, approved December 21, 2022)

[57] A 1, ¶ 2; MSPB Final Decision  ECF No. 64, Page ID#: 2886.

To prove entitlement to disability retirement under FERS, Ms. Dixon-Tribou had to prove to OPM she was in a positon where her MS could not be reasonably accommodated, and the lack of accommodations caused the alleged work and attendance deficiencies. Ms. Dixon-Tribou met that burden of proof and OPM found her entitled to disability because she was in a position where she could not be accommodated. OPM's award of disability retirement substantiated Ms. Dixon-Tribou's allegations that VA unilaterally placed her in a position where it could not accommodate her.

OPM's decision also proved Ms. Dixon-Tribou's claim that VA's allegations of dishonesty were false and her alleged work and attendance deficiencies were due to its failure to reasonably accommodate her MS. Nonetheless, in its defense of the its removal of Ms. Dixon-Tribou, the VA resurrected the same false allegations of work dishonesty made it made to OPM to object to her disability retirement.[58] However, OPM's decision on Ms. Dixon-Tribou's disability was final and conclusive and the District Court was prohibited from reviewing the factual underpinnings of that decision.[59] The VA, using the

---

[58] A 2, pp. 7-9; MSPB Appeal PH-844E-19-0223-I-1, OPM Letter of March 23, 2019, Docket No. 64, Page ID#: 2893.

[59] The Office shall determine questions of disability and dependency arising under the provisions of this chapter [5 USCS §§ 8401 et seq.] administered by the Office. Except to the extent provided under subsection (e), the decisions of the Office concerning these matters are final and conclusive and are not subject to review.

issues defending her removal, tricked the District Court into reviewing the factual

underpinning of OPM's decision on Ms. Dixon-Tribou's disability. Therefore, as

OPM's decisions on disability are final and conclusive, and not subject to review,[60]

the summary judgment entered in favor of VA should be reversed as further

explained herein.   OPM approved Ms. Dixon-Tribou's disability retirement

retroactive to December 12, 2016, the date of her removal, which means her

removal was canceled in its entirety.[61]

## STANDARD OF REVIEW

The Court of Appeals reviews the District Court's grant of summary

judgment *de novo,* drawing all reasonable inferences in favor of Ms. Dixon-Tribou,

as the non-moving party, while "ignoring conclusory allegations, improbable

inferences, and unsupported speculation.[62]  In performing that review, the court is

mindful that a material error of law is always an abuse of discretion.[63]  Moreover,

"[w]hen opposing parties, as in this case, tell two different stories, one of which is

blatantly contradicted by the record, so that no reasonable jury could believe it, a

---

5 U.S.C.S. § 8461 (October 19, 2022)

[60] *Id.*

[61] *Grayton v. OPM*, 136 F. App'x 364, 365 (Fed. Cir. 2005)

[62] *See Jones v. Walgreen Co.*, 679 F.3d 9, 12 (1st Cir. 2012)(citing

[63] *Mancini v. City of Providence,* 909 F.3d 32, 36 (1st Cir. 2018)

court should not adopt that version of the facts for the purposes of ruling on a motion for summary judgment.[64]

As further explained herein, the VA's statements justifying its failure to accommodate Ms. Dixon-Tribou are not justified by the Record . *RAC Cochran* testified that a 2-day a week of telecommute reasonably accommodated Ms. Dixon-Tribou because *Dr. Lash* recommended it, but  according to *Dr. Lash's* statement *Dr. Lash* denied he made that recommendation.  The VA claims it provided the required 71° ambient room temperature to accommodate Ms. Dixon-Tribou.  However, the VA's own witness contradicted that claim when she described the effect the higher temperatures had on Ms. Dixon-Tribou after she personally witnessed considerably higher room temperatures.  Therefore, the VA has not shown there is no genuine issue of material fact and the Court's summary judgment for the VA should be vacated.

**ARGUMENT**

## I.    THE COURT ERRED IN ASSUMING IT HAD JURISDICTION TO ALLOW DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT MOTION AND DENY PLAINTIFF'S

The U.S. Office of Personnel Management (OPM) is the only federal agency empowered to adjudicate claims regarding the federal retirement system. The standard of § 8461 applies to reviews of disability determinations under the Civil

---

[64] Scott v. Harris, 550 U.S. 372, 380 (2007).

Service Retirement System (CSRS) as well as the FERS.[65]  5 U.S.C.S. §§ 8401[the

Federal Retirement System] *et seq*. questions of disability arising under the

provisions of §§ 8347(c) and 8461(d) are identical,[66] and the term "annuitant" has

the meaning given such term under section  5 U.S.C. § 8331(9) or 5 U.S.C. §

8401(2) of title 5, United States Code.[67]   Both §§ 8347(c) and 8461(d) prohibit

review of OPM disability determinations; they are final and conclusive and are not

subject to review;[68] except by the OPM/U.S. Merit Systems Protection Board

("OPM/MSPB") remedial process which provides employees with an adequate

administrative remedy.[69]

---

[65]This standard applies
to reviews of disability determinations under the Civil Service Retirement System (CSRS) as well as the FERS. *Thompson v. OPM,* 208 F. App'x 937, 938 (Fed. Cir. 2006)

[66]  The holding was based on a precedent of the U.S. Supreme Court about 5U.S.C.S. § 8347(c) (1988), which was identical substantially to 5 U.S.C.S. § 8461(d).  *Beall v. Office of Personnel Mgt.*, 95-3500, 1995 U.S. App. LEXIS 27129, at *1 (Fed. Cir. Sep. 20, 1995)

[67] 5 U.S.C.S. § 8331 (LexisNexis, Lexis Advance through Public Law 117-214, approved October 19, 2022)

[68]  Questions of disability and dependency arising under the provisions of this chapter [5 USCS §§ 8401 et seq.] administered by the Office . . . are final and conclusive and are not subject to review. The Office shall determine questions of disability and dependency arising under the provisions of this chapter [5 USCS §§ 8401 et seq.] administered by the Office . . .the decisions of the Office concerning these matters are final and conclusive and are not subject to review.
5 U.S.C.S. § 8461(d) (October 19, 2022)

[69] The OPM/U.S. Merit Systems Protection Board (MSPB) remedial process

Disregarding §§ 8347(c) and 8461(d) bar on review of its disability determinations, the VA's defense demanded the District Court to review and reject OPM's decision that Ms. Dixon-Tribou was not reasonably accommodated in the positon the VA had placed her in January 2015. To be entitled to FERS disability retirement, OPM had to determine Ms. Dixon-Tribou was in a position where her disabling MS and SD could not be reasonably accommodated, and that her work deficiencies were due to lack of accommodations. That determination was made by OPM on May 14, 2019 and it notified the MSPB she had submitted sufficient evidence to establish she was entitled to disability retirement under FERS. It meant that the alleged work deficiencies were due to her unaccommodated disabilities. Therefore, District Court's summary judgment for the VA should be vacated as further explained herein.

A. **The Court failed its first duty to determine if it had subject-matter jurisdiction before allowing Defendant's CMSJ.**

From the beginning of this case the District Court was aware Ms. Dixon-Tribou's complaint challenged its jurisdiction to review the matters the VA raised in its defense.[70] Throughout the case proceedings, Ms. Dixon-Tribou maintained the District Court lacked the jurisdiction to review the VA's defense allegations

provided the employees with an adequate administrative remedy. *Eisenbeiser v. Chertoff,* 448 F. Supp. 2d 106, 108 (D.D.C. 2006)

[70] ECF No. 1, Page ID#: 7, Complaint IV Collateral attack.

28

that she was dishonest in the performance of her work duties to justify her December 12, 2016, removal.[71]  When a court's jurisdiction is challenged, its first duty is to determine its jurisdiction to entertain and review the case on the merits.[72] In this case the District Court's jurisdiction to review OPM's determination on disability was constantly before it.

The VA's defense for removing Ms. Dixon-Tribou on December 2016 was that she performed her work duties dishonestly.[73]  However, on May 14, 2019 OPM notified the MSPB that she was entitled to disability retirement under FERS based on the evidence in the Record.  OPM's decision meant the VA's alleged work deficiencies were due to the VA's inability to reasonably accommodate her MS and SD disabilities in the position it placed her on January 11, 2016.  OPM's determination on Ms. Dixon-Tribou's was final and conclusive and its review by

---

[71] A 1;  ECF No. 64, Pages ID# 2868.  Removal Letter from Alfred A. Montoya, ,Jr., Center Director, White River Junction, Vermont (Nov. 3, 2016).

[72] A federal Court must satisfy itself as to its jurisdiction over the subject matter as an important first step to any case. *See Thompson v. United States*, 291 F.2d 67, 68 (10th Cir. 1961) ("It is elementary that the court's first duty is to determine its jurisdiction to entertain and decide a case on its merits.");  *Amiriantz v. New Jersey*, No. 06-1743, 2006 U.S. Dist. LEXIS 86546, 2006 WL 3486814, at *2 (D.N.J. Nov. 16, 2006) ("It is well established that a federal court must first determine whether it has subject matter jurisdiction over a case before it can pass on the merits of the case." (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998))), *aff'd*, 251 Fed. App'x 787 (3d Cir. 2007). *Luminent Mtge. Capital, Inc. v. Merrill Lynch & Co.,* 652 F. Supp. 2d 576, 586 (E.D. Pa. 2009)

[73] *Supra,* note 68.

the District Court was prohibited.[74]  It was prohibited because review of the VA's

defense consisted of the factual underpinnings of OPM's determination to approve

Ms. Dixon-Tribou's FERS disability application.[75]  Nonetheless, without first

determining if it had subject-matter jurisdiction the District Court reviewed the

factual underpinnings of OPM's disability determination and passed on the merits

of the case and allowed the VA's CMSJ which is prohibited [76]

Indeed, had the District Court first addressed the subject-matter jurisdiction

issues before ruling on the merits, it would have better understood the basis of Ms.

Dixon-Tribou's claim and not allowed the VA's CMSJ.  That claim being she was

---

[74] The Office shall determine questions of disability and dependency arising under the provisions of this chapter [5 USCS §§ 8401 et seq.] administered by the Office. Except to the extent provided under subsection (e), the decisions of the Office concerning these matters are final and conclusive and are not subject to review. 5 U.S.C.S. § 8461 (October 19, 2022)

[75] OPM Retirement Approval Letter from U.S. Office of Personnel Management (May 21, 2019), to Plaintiff Bonnie C. Dixon-Tribou attached and incorporated herein as **Plaintiff's Exhibit "C"**

[76] A federal Court must satisfy itself as to its jurisdiction over the subject matter as an important first step to any case. *See Thompson v. United States*, 291 F.2d 67, 68 (10th Cir. 1961) ("It is elementary that the court's first duty is to determine its jurisdiction to entertain and decide a case on its merits."); *Amiriantz v. New Jersey*, No. 06-1743, 2006 U.S. Dist. LEXIS 86546, 2006 WL 3486814, at *2 (D.N.J. Nov. 16, 2006) ("It is well established that a federal court must first determine whether it has subject matter jurisdiction over a case before it can pass on the merits of the case." (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998)), *aff'd*, 251 Fed. App'x 787 (3d Cir. 2007).  *Luminent Mtge. Capital, Inc. v. Merrill Lynch & Co.,* 652 F. Supp. 2d 576, 586 (E.D. Pa. 2009)

unilaterally removed from an accommodated position in the VAMC Chief Nurse's QM Department and placed in a position where she could not be reasonably accommodated.  Regardless, the District Court allowed the VA to proceed with a defense challenging OPM's Final Agency Decision (FAD) finding Ms. Dixon-Tribou was removed due to an unaccommodated disability pursuant to  5 C.F.R. § 844.103(a)(2), after her reasonable accommodation was removed.  Had the District Court understood Ms. Dixon-Tribou's complaint, and applied the correct facts, it would not have reviewed and rejected OPM's decision on Ms. Dixon-Tribou's disability and allowed summary judgment in favor of the VA which erroneously claimed Ms. Dixon-Tribou was dishonest.[77]

### 1.    The VA lacks standing to challenge OPM's reversal of its suitably determination and removal of Ms. Dixon-Tribou.

Absent a specific delegation of authority by OPM, the VA could not have removed Ms. Dixon-Tribou without first making a suitability determination of her work performance.[78]  When OPM delegated authority to the VA to remove federal

---

[77]A 1; Removal Letter from Alfred A. Montoya, Jr., Center Director, White River Junction, Vermont (Nov. 3, 2016). ECF No. 82, Page ID #: 3101.

[78] Absent a specific delegation of authority by OPM to the agency to issue suitability determinations  . . . the agency could not remove the appellant based on its own suitability determination, *see Gaff,* 45 M.S.P.R. at 392; *Stiles,* 36 M.S.P.R. at 648.  *Seigla v. Smithsonian Inst.* , 62 M.S.P.R. 55, 57, 1994 MSPB LEXIS 436, *4 (M.S.P.B. April 14, 1994)

employees based on suitability,[79] the responsibility and accountability for removal clearly remained with OPM.[80]  Therefore, the VA has no standing to argue Ms. Dixon-Tribou was not disabled and unsuitable for the position she retired from, That was a suitability determination reserved for OPM, as evidenced in its Final Agency Decision (FAD) that she was in a position where she could not be reasonably accommodated as alleged in her complaint and subsequent CMSJ.

Indeed, OPM's responsibility for determining the validity of the reason for the VA's removal Ms. Dixon-Tribou is supported by 5 C.F.R. § 844.202(b)(1) which required the VA to advise her in writing of the possibility she may eligible for disability retirement and of the time limit for filing an application per 5 C.F.R. § 844.202(b)(1) to contest her removal.  The regulation required the VA to act when it appears, as in the instant appeal, the basis for the removal was caused by a medical condition, regardless of whether the removal was for disciplinary or other

---

[79] **(a)** Subject to the limitations and requirements of paragraphs (f) and (g) of this section, OPM delegates to the heads of agencies authority for making suitability determinations 5 C.F.R. § 731.103 (Lexis Advance through the Dec. 15, 2022 issue of the Federal Register, with the exception of the amendments appearing at 87 FR 76816 and 87 FR 76569)

[80] When an agency delegates authority to its subordinate, responsibility--and thus accountability--clearly remain with the [F]ederal agency. *Cronin v. United States Postal Serv.,* 2022 MSPB LEXIS 1897, *16-19, 2022 M.S.P.B. 13, P18 (M.S.P.B. May 24, 2022)

reasons, as in the instant case.[81]  The VA failed to make the notification which could be interpreted to mean it did not want her to exercise he right of appeal of her removal.

However, even though the VA failed to notify her of her right to appeal her removal to OPM by filing an application for disability retirement, she was successful. Due to her disability application filing Ms. Dixon-was able to take her appeal to the MSPB after OPM's initial decision to deny it based on the VA's original unsuitability disability determination and she prevailed at the MSPB when OPM reviewed the Record an issued a new FAD approving her retirement; the MSPB has exclusive jurisdiction to review OPM's factual underpinnings of OPM disability findings.

     **2.**     **Review of OPM's disability findings was prohibited by statute.**

The District Court made a material error when it claimed § 8347 only applies to disability determinations under the Civil Service Retirement System

---

[81] The plain language of the regulation does not support this construction; rather, the regulation requires the agency to act when it appears that the basis for the removal was caused by a medical condition, regardless of whether the removal was for disciplinary or other reasons. 5 C.F.R. § 844.202(b)(1). *King v. OPM* , 2009 M.S.P.B. 210, P13, 112 M.S.P.R. 522, 528, 2009 MSPB LEXIS 6929, *12 (M.S.P.B. October 19, 2009)

(CSRS), not under FERS.[82] That decision was a material error as the Civil Service Retirement Act (CSRA) scheme for administrative and judicial review of OPM decisions on disability under the CSRS and FERS applies to both CSRS and FERS employees. The remedial schemes for the two retirement systems are virtually identical.[83]

The Civil Service Act RA scheme for administrative and judicial review in §§ 8347(c) and 8461(d) applies to both CSRS and FERS employees. The CSRA scheme for administrative and judicial review applies to both CSRS and FERS employees.[84] However, the District Court held that because Ms. Dixon-Tribou "repeatedly cites to § 8347 she has not asked me to review the correctness of OPM's FERS decision (which is the decision § 8461(d) applies to), so I do not understand what applicability this statute could have to this case.[85]

### 3.    The Court's claim Ms. Dixon-Tribou did not ask it to Review OPM's decision on disability does not apply.

The District Court's decision to review the factual underpinnings of OPM's decision based upon Ms. Dixon- Tribou citing of § 8347 is immaterial at most.  But

---

[82] The CSRA scheme for administrative and judicial review applies to both CSRS and FERS employees. The remedial schemes for the two retirement systems are virtually identical. *Compare* 5 U.S.C. § 8347 *with* 5 U.S.C. § 8461.  *Eisenbeiser v. Chertoff,* 448 F. Supp. 2d 106, 112 (D.D.C. 2006)

[83] *Eisenbeiser v. Chertoff,* 448 F. Supp. 2d 106, 112 (D.D.C. 2006)

[84] A . . . ?. ECF No. 82, Page ID#: 3102, note 13, ¶ 2 (last sentence).

[85] *Id.*

the District Court's statement that Ms. Dixon-Tribou had not asked the Court "**to review the correctness of OPM's FERS decision (which is the decision § 8461(d) applies to), so I do not understand what applicability this statute could have to this case** was odd.[86]

The District Court's argument was odd as Ms. Dixon-Tribou had no reason to ask the Court to review OPM's decision because she prevailed at the MSPB when OPM found her entitled to FERS disability.  It was the VA that asked the District Court to review OPM's decision on disability in violation of §§ 8347(c) and 8461(d).

## II.   THE COURT MISINTERPRETED LAW AND FACTS WHEN IT GRANTED DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The Record establishes that the District Court did not consider Ms. Dixon-Tribou's Cross-Motion ("CMSJ") in the light most favorable to her by overlooking the implications of her January 11, 2015 transfer.  On that date, she was taken out of a position reasonably accommodating her MS and SD and placed in a position where the VA could not accommodate her disabilities.  Following her transfer, Ms. Dixon-Tribou's performance allegedly declined due to a lack of reasonable accommodations and the VA removed her on December 12, 2016, for dishonest work practices.  She knew the VA removed her because of her disabling MS and

---

[86] A . . . ? *Supra,* note 86.

SD and, in accordance with Civil Service Retirement Act (CSRA), the exclusive mechanism for challenging adverse personnel actions in federal employment is with OPM and the MSPB.[87]  Ms. Dixon-Tribou timely appealed her removal with an application for disability retirement to OPM in January 2017.[88]

Ms. Dixon-Tribou appealed her removal pursuant to the OPM/MSPB judicial process and it was held she was entitled to disability under the Federal Employees Retirement System (FERS) which is encompassed by the Civil Service Retirement System (CSRS).[89]  She prevailed, OPM/ MSPB held she submitted sufficient evidence to prove she was entitled to FERS disability retirement.[90]  The Court knew she had prevailed.[91] The District Court knew and acknowledged that for Ms. Dixon-Tribou to be entitled to FERS disability retirement she had to prove to OPM her alleged work deficiencies were the result of unaccommodated disabilities,[92] the OPM/MSPB decision on her disability was final and conclusive

---

[87] In Elgin, the Supreme Court held that the CSRA review scheme was exclusive route for discharged federal employees to contest their removal despite the fact that their petitions challenged the constitutionality of a statute. *Rodriguez v. United States,* 852 F.3d 67, 84 (1st Cir. 2017)

[88] JA 411;  ECF No. 64, Page ID#:  2893, MSPB Docket Report  No.1.

[89] *Supra,* note 83.

[90] JA 411;  ECF No. 64, Page ID#: 2837, Ms, Dixon-Tribou CMSJ,  ¶¶ 48-54.

[91] *Id.*

[92] ECF No. 82, Page ID"#: 3101, ¶ 1.

and not subject to review by the Court.[93]  The District Court also knew the VA argued the same issues of work dishonesty it had argued to OPM to justify its removal of Ms. Dixon-Tribou which were unpersuasive.[94]  Regardless, the Court allowed the VA to argue the same issues it argued in opposition to Ms. Dixon-Tribou's application for disability following her removal.  Therefore, the District Court misinterpreted the law and incorrectly assumed it had jurisdiction to review and reject OPM's decision which was prohibited by statute[95] and *res judicata.*

### A.  There is conflicting witness testimony concerning Ms. Dixon-Tribou's reasonable accommodations.

The District Court failed to consider conflicting testimony of facts argued in Ms. Dixon-Tribou's opposition to the VA's Cross-Motion for Summary Judgment (CMSJ).  VAMC *Assistant Chief of Staff Dr. Ray E. Lash, M.D. ("Dr. Lash")* was the VA's medical expert and he testified Ms. Dixon-Tribou's full-time from-home telework was a reasonable accommodation request.  VAMC *Reasonable Accommodations Coordinator Dustin Cochran ("RAC Cochran")* testified it was not.  The Court gave preference to *RAC Cochran's* testimony instead of *Dr. Lash's* when it made its decision to allow the VA's CMSJ.

---

[93] *Black v. OPM,* 250 F. App'x 343, 345 (Fed. Cir. 2007)

[94] JA 411; *See* MSPB Appeal #: PH-844E-19-0223-I-1, *Bonnie Dixon-Tribou v. Office of Personnel Management,*  Docket Report Question No. 7.

[95] 5 U.S.C. 8461(d).

The District Court's unexplained acceptance of *Cochran's* statement was a determination of material fact inherently based on credibility in light of the moving party which is not permitted at summary judgment decisions. The District Court was required to view the evidence of *Dr. Lash* and *Cochran's* conflicting testimonies and all the resulting factual inferences in favor of Ms. Dixon-Tribou, the nonmoving party. [96]  It did not; it accepted the testimony of *RAC Cochran* instead of *Dr. Lash's* expert medical opinion, which was a material error in the District Court's decision to allow the VA's CMSJ.

1.     **The conflict in *RAC Cochran's* and *Dr. Lash's* expert medical opinion is a question of material fact for a jury.**

The Record evidence proves a conflict between *Dr. Lash's* expert medical opinion and *RAC Cochran's* testimony which creates a conflict of material fact that a reasonable jury could resolve in favor of the nonmoving party, Ms. Dixon-Tribou.[97]  The Record evidence shows *Dr. Lash* agreed with Ms. Dixon-Tribou's claim that her request for full-time telework was a reasonable request for accommodation, and the District Court overlooked it.

The conflict arose when *RAC Cochran* requested a medical opinion from the VA's medical expert *Dr. Lash* who responded:

---

[96]  The court at summary judgment must view the evidence and all factual inferences therefrom in the light most favorable to the non-moving party. *Casas Office Machs. v. Mita Copystar Am.*, 42 F.3d 668, 670 (1st Cir. 1994)

[97]  Ms. Dixon-Tribou CMSJ, ECF No. 64, Page ID#'s: 2834-2835, and 2835.

**Multiple sclerosis can be a challenging illness both in symptom management and treatment. In this case I believe there is a [sic.] some degree of potential for improvement in her function with strict management of temperature control and work conditions.  I think one could make a reasonable case to consider a trial of strict home temperature control as a means of managing her symptoms and ability to function in her work.[98]**

However, *RAC Cochran* claimed *Dr. Lash* only recommended 2-days a week for six months to evaluate the effectiveness of Ms. Dixon-Tribou's full-time telework request as a pretext for denying her accommodation for full-time telework.  *RAC Cochran* testified:

**On March 28, 2016 Ms. Dixon-Tribou's accommodation was approved to work from home up to 2 days per week to manage her symptoms and pain as needed. This request was approved by Jonathan Meserve, based on a recommendation by Dr. Lash. The recommendation was that the Complainant be permitted to telework two days per week in order to manage her pain with a revaluation of the situation in six months.[99]**

When *Dr. Lash* was questioned further concerning *RAC Cochran's* testimony that he recommended a 2- day telework trial period for six months he testified:

**I responded that one could make a reasonable case to consider a home temperature control trial to see if it would help. This was the extent of my involvement. I did have a conversation with Mr. Cochran where I expressed that I was not optimistic that this would be helpful. I said, "You never know because MS is a difficult diagnosis. That being said, she should be given the benefit of the doubt, and it was reasonable to try**

---

[98] A . . . ECF No: 55-14, Page ID#: 1258

[99]  117-1118`*See* signed Summary of Sworn Testimony of *Dustin C. Cochran* at p. 106 of ROI Investigator's Report of Investigation. (Section 7-3)." ECF No 55-13, Page ID#: 1075, paragraph 1, last 3 sentences. *Supra,* note 21.

it." **I don't recall specifically who made the recommendation that the Complainant be approved to telework two days per week, instead of five. I'm pretty sure that I did not say "Five days is not reasonable. Why don't you try two?"[100]**

*Dr. Lash* concluded his statement by clarifying his original medical opinion, he stated, **"The Complainant is correct in that I have never met or examined her. I responded to the recommendations of her neurologist, and the general question of whether the request was reasonable based on the Complainant's condition. I said, 'Yes' the request was reasonable. "**[101]

Based on the above-uncontested Record evidence, the conflicting testimony of the VA witnesses proves there is an unresolved issue of material fact as to whether or not Ms. Dixon-Tribou's request for full-time telework was indeed reasonable.  The District Court at summary judgment did not view the evidence and all factual inferences in the light most favorable to the non-moving party[102] and summary judgment may not adopt the inference least favorable to the nonmoving party as it did in this case.[103]

---

[100] ECF No. 55-13, Page ID#: 1121

[101] *Supra,*

[102] *Casas Office Machs. v. Mita Copystar Am.*, 42 F.3d 668, 670 (1st Cir. 1994)

[103] If the facts permit more than one reasonable inference, the court on summary judgment may not adopt the inference least favorable to the non-movant.  *Casas Office Machs.,*42 F.3d 668, 684 (1st Cir. 1994)

**B.**    **The Court overlooked evidence that supported full-time telework.**

The Record establishes the District Court overlooked evidence proving the

VA did not reasonably accommodate Ms. Dixon-Tribou with an ambient room

temperature of 71° or less as required.  On July 8, 2016, senior co-worker and VA

witness *Melinda LeLand ("Ms. LeLand")* was assigned to provide Ms. Dixon-

Tribou's with training during her time in the CCD.[104]  In its initial disclosures, the

VA identified *Ms. LeLand* as a VA witness who may have discoverable

information related to the VA's failure to accommodate Ms. Dixon-Tribou's MS

and her subsequent  removal.[105]

The EEO Investigator of Ms. Dixon-Tribou's Formal Complaint of

Discrimination included a statement made by *Ms. LeLand* that confirmed Ms.

Dixon-Tribou was not reasonably accommodated with room temperatures

sufficient to enable her to adequately perform her duties. *Ms. LeLand* stated **"[o]n**

**the days the office was 75-76 degrees, Bonnie [Dixon-Tribou] seemed to have**

**some difficulty focusing and moving from one system to another. The days**

**that it was 69-71, she was able to quickly process her referrals and didn't need**

**my *assistance."*[106]**

---

[104] ECF No. 55-14, Page ID#: 1281-1282.

[105] A.. . . ECF No. 55-14, Page ID#: 1245.

[106] *Casas Office Machs.,* 42 F.3d 668, 684 (1st Cir. 1994). S*upra,* note 98.

*Ms. LeLand* was a VA witness who provided evidence that a reasonable juror could have concluded in favor of Ms. Dixon-Tribou, not the moving VA, that the VA failed to reasonably accommodate Ms. Dixon-Tribou with the required ambient room temperatures of 71° or less which is material in this case.  However, the District Court viewed the factual evidence in the light least  favorable to Ms. Dixon-Tribou which were contrary to her arguments the VA did not accommodate her with ambient room temperatures of 71° or less, which is impermissible at summary judgment.  The court at summary judgment must view the evidence and all factual inferences in the light most favorable to the nonmoving party[107] and summary judgment may not adopt the inference least favorable to the non-movant, Ms. Dixon-Tribou as it did here.[108]

### C.    <u>Ms. Dixon-Tribou did not ignore her disciplinary record</u>.

The District Court's claim Ms. Dixon-Tribou ignored her disciplinary record is mistaken.[109]  She prevailed on her MSPB appeal when OPM determined she submitted evidence entitled her to FERS disability retirement which proved the

---

[107] *Casas Office Machs.,* 42 F.3d 668, 670 (1st Cir. 1994)

[108] If the facts permit more than one reasonable inference, the court on summary judgment may not adopt the inference least favorable to the non-movant. *Casas Office Machs.,*42 F.3d 668, 684 (1st Cir. 1994)

[109]  ECF No. 82, Page ID#: 3109

VA's allegations of attendance and work discrepancies were immaterial.[110]   In its

undisputed that OPM's notice of her entitlement to disability retirement was its

Final Agency Decision (FAD).  It is undisputed her MSPB appeal required her to

include OPM's original denial of her retirement application and its reasons for

denial which included the VA's allegations of her attendance and conduct

deficiencies.  Ms. Dixon-Tribou's appeal proves OPM's FAD entitled her to

disability retirement after OPM determined her disciplinary record was immaterial

as the result of the VA's failure to reasonably accommodate her resulted in the

alleged discrepancies, OPM could not have made that determination without that

finding.[111]

        OPM's subsequent review of the Record that resulted in the approval of her

FERS disability retirement proves the District Court's holding Ms. Dixon-Tribou

overlooked that her disciplinary record was mistaken. The VA's allegations in its

opposition to Ms. Dixon-Tribou's CMSJ also included other allegations related to

the VA's claims of her work dishonesty. Her MSPB appeal proves immediate

supervisor *Corey Vail (Mr. Vail)* included all the VA's claims of discrepancies in

---

[110] A 2; ECF No. 64, 2893 Page ID# 2893, MSPB Appeal No. **P**H-844E-19-
0223-I-1 Docket Report No. 1.

[111] A . . .  ECF No. 64, 2893 Page ID# 2893, MSPB Appeal No. **P**H-844E-19-
0223-I-1 Docket Report No. 1.

the appeal of her removal[112] which were found to be without merit as proven by OPM's FAD finding she was entitled to FERS disability retirement.  The VA's response to Ms. Dixon-Tribou's application for disability retirement also proves OPM considered all the issues proffered in its defense of Ms. Dixon-Tribou's discriminatory removal from federal service on December 12, 2016 was inappropriate and the District Court's granting the VA's CMSJ should be vacated.

### D.    The Court's claim Ms. Dixon-Tribou failed to respond to other claims is misplaced.

The District Court's holding Ms. Dixon-Tribou failed to file any response and the Defendant's additional facts are all deemed admitted for purposes of the VA's CMSJ, which include striking  ¶¶ 2, 6, 13, 14, 21, 23, 25, 32, 38, 44, 46–48, 50–55, 57, is misplaced.  The VA's allegations of dishonesty alleged in its Statement of Facts are immaterial as OPM considered those allegations and found them unpersuasive due to Ms. Dixon-Tribou's disabling MS and SD after its review of the Record.[113]  Also, the District Court did not have the jurisdiction to review OPM's and the MSPB determination on Ms. Dixon-Tribou's disability as previously argue herein.

---

[112] *Supra,* note 105.

[113] Upon further review OPM has determined that the appellant has submitted sufficient documentation to establish his [sic] entitlement to disability retirement benefits under the Federal Employees Retirement System (FERS). Therefore, OPM is granting the appellant a disability retirement benefit. A… ECF No. 64, Page ID#: 2860, ¶ 3.

## <u>CONCLUSION</u>

For the foregoing reasons, the judgment of the Federal District Court of

Maine should be reversed.

Respectfully submitted,

Robert F. Stone, Esq.
Attorney for Plaintiff-Appellant
Bonnie Dixon-Tribou

Dated: January 17, 2023          /s/Robert F. Stone
                                 Robert F. Stone, Esq.
                                 Law Office of Robert F. Stone
                                 P.O. Box 401
                                 Conway, MA  01373
                                 rfstoneesq@comcast.net

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32(g), I hereby certify that this document complies with the type-volume limitations set forth in Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 10, 581 words.

I further certify that this document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in a 14-point Times New Roman font.

<div style="margin-left: 40%;">

Respectfully submitted,

Robert F. Stone, Esq.
Attorney for Plaintiff-Appellant
Bonnie Dixon-Tribou

</div>

Dated: January 17, 2023

<div style="margin-left: 40%;">

/s/Robert F. Stone＿＿＿＿＿＿＿
Robert F. Stone, Esq.
Law Office of Robert F. Stone
P.O. Box 401
Conway, MA  01373
rfstoneesq@comcast.net

</div>

# ADDENDUM

# ADDENDUM TABLE OF CONTENTS

**Page**

Judgment, filed July 13, 2022 ......................................................... ADD. 1

UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| BONNIE DIXON-TRIBOU, | ) | |
| | ) | |
| PLAINTIFF | ) | |
| | ) | |
| v. | ) | CIVIL NO. 2:20-cv-00379-NT |
| | ) | |
| DENIS MCDONOUGH | ) | |
| | ) | |
| DEFENDANT | ) | |

<u>JUDGMENT</u>

In accordance with the Order on the Parties' Motions for Summary Judgment issued on July 13, 2022, by U.S. District Judge Nancy Torresen, JUDGMENT is hereby entered for defendant Denis McDonough, against plaintiff Bonnie Dixon-Tribou, on all counts of the Complaint.

Christa K. Berry
Clerk of Court

By: 

/s/ Stacey L. Graf
Stacey L. Graf
Deputy Clerk

Dated:  July 13, 2022

ADD. 1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this same date, I electronically filed the foregoing

document with the United States Court of Appeals for the First Circuit by using the

CM/ECF system, which electronically served a copy on all counsel of record.

> Robert F. Stone, Esq.
> Attorney for Plaintiff-Appellant
> Bonnie Dixon-Tribou

Dated: January 24, 2023          /s/Robert F. Stone
                                 Robert F. Stone, Esq.
                                 Law Office of Robert F. Stone
                                 P.O. Box 401
                                 Conway, MA  01373
                                 rfstoneesq@comcast.net