# CA No. 22-1696

## UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

BONNIE DIXON-TRIBOU,

Plaintiff - Appellant,

v.

DENIS RICHARD MCDONOUGH,
Secretary, U.S. Department of Veterans Affairs,

Defendant - Appellee.

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

## BRIEF OF APPELLEE DENIS MCDONOUGH

DARCIE N. MCELWEE
U.S. Attorney

James D. Concannon
Assistant U.S. Attorney
100 Middle Street
East Tower, Sixth Floor
Portland, ME 04101
(207) 780-3257

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................... iii

REASONS WHY ORAL ARGUMENT SHOULD BE HEARD .............. vi

JURISDICTIONAL STATEMENT ........................................................ 1

STATEMENT OF ISSUES PRESENTED ............................................. 3

STATEMENT OF THE CASE ............................................................... 4

   I. Statement of Facts ......................................................................... 4

      A. Appellant's work at Togus 2006-2014, injury, and
      MS diagnosis .............................................................................. 4

      B. Appellant's transfer to the CCD, issues with office temperature,
      and accommodations ................................................................. 6

      C. Appellant's misconduct issues and first discipline ....................... 8

      D. Appellant's temperature issues in Room 218E and move to
      Room 313 .................................................................................. 9

      E. Appellant's March 2016 telework request, telework approval,
      and move to Quarters 32 .......................................................... 11

      F. Workload adjustments, complaints regarding temperatures in
      Quarters 32 ............................................................................. 12

      G. Allegations of Appellant's further misconduct, investigation .... 14

      H. Appellant's full time telework request, discussions with VA
      regarding options .................................................................... 16

      I. Appellant is removed from federal service ................................. 16

      J. The EEO investigation ............................................................. 18

      K. Appellant's application for disability retirement benefits .......... 20

   II. Procedural History ...................................................................... 21

SUMMARY OF THE ARGUMENT ....................................................... 29

ARGUMENT ........................................................................................ 30

   I. STANDARD OF REVIEW ............................................................. 30

   II. THE DISTRICT COURT CORRECTLY APPLIED THE
   SUMMARYJUDGMENT STANDARD IN ASSESSING THE
   PARTIES' MOTIONS FOR SUMMARY JUDGMENT ...................... 32

      A. Section 8461(d) of Title 5 of the United States Code Is
      Inapplicable to This Action ............................................. 32

      B. OPM's Decision on Appellant's Application for Disability
      Retirement Benefits Is Not Determinative of Any Issue or Claim in
      This Action ...................................................................... 36

      C. Appellant's Standing Arguments Are Waived ............................ 48

   III. THE DISTRICT COURT CORRECTLY ASSESSED THE
   PARTIES' MERITS ARGUMENTS IN DECIDING APPELLEE'S
   MOTION FOR SUMMARY JUDGMENT ........................................... 48

      A. January 2015 Reassignment ....................................... 49

      B. Testimony of Dr. Lash and Mr. Cochran.................................. 51

      C. Melinda Leland Statement........................................... 55

      D. Appellant's Disciplinary Record ................................. 64

      E. Appellant's Failure to Respond to Appellee's Statement of
      Material Facts ................................................................. 65

CONCLUSION ..................................................................................... 66

# TABLE OF AUTHORITIES

## Federal Cases

*Ahern v. Shinseki*, 629 F.3d 49 (1st Cir. 2010) .................................... 31

*Almodovar v. Willkie*, No. 1:19-CV-00166-LEW,
    2020 WL 7634586 (D. Me. Dec. 22, 2020) ......................................... 50

*Bangura v. Shulkin*, 334 F. Supp. 3d 443 (D. Mass. 2018) .................. 40

*Banks v. Deere*, 829 F.3d 661 (8th Cir. 2016) .................................. 58-59

*Barth v. City of Peabody*, Civil Action No. 15-13794-MBB,
    2017 WL 114403 (D. Mass. Jan. 11, 2017) ...................................... 58

*Buckley v. United States*, 51 Fed. Cl. 174 (Fed. Cl. 2001) ................... 47

*Carroll v. Xerox Corp.*, 294 F.3d 231 (1st Cir. 2002) ........................... 60

*Collazo-Rosado v. University of Puerto Rico*,
    765 F.3d 86 (1st Cir. 2014) .............................................................. 31

*Conward v. Cambridge Sch. Comm.*, 171 F.3d 12 (1st Cir. 1999) ....... 31

*Cox v. Hainey*, 391 F.3d 25 (1st Cir. 2004) .......................................... 31

*Delamater v. Schweiker*, 721 F.2d 50 (2d Cir. 1983) ...................... 46-47

*Fantini v. Salem State Coll.*, 557 F.3d 22 (1st Cir. 2009) ................... 31

*Ferrer Marrero v. Misey Restaurant, Inc.*, Civ. No. 17-1911
    (MDM), 2019 WL 6833824 (D.P.R. Dec. 13, 2019) ..................... 57-58

*Forsythe v. Wayfair Inc.*, 27 F.4th 67 (1st Cir. 2022) .......................... 48

*Garcia-González v. Puig-Morales*, 761 F.3d 81 (1st Cir. 2014) ........... 32

*Geoffroy v. Town of Winchendon, Massachusetts*,
    959 F.3d 1 (1st Cir. 2020) ................................................................ 44

*Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell v. Medfit Int'l, Inc.*,
    982 F.2d 686 (1st Cir. 1993) ........................................................... 57

*Gonzalez-Pina v. Rodriguez*, 407 F.3d 425 (1st Cir. 2005) ............. 39, 41

iii

*Hannon v. Beard*, 645 F.3d 45 (1st Cir. 2011) ...................................... 32

*Howard v. United Parcel Serv., Inc.*,
101 F. Supp. 3d 343 (S.D.N.Y. 2015) ................................................ 64

*Hudson v. Spencer*, No. 18-2069,
2021 WL 9494322 (1st Cir. Nov. 2, 2021) ............................................ 57

*Hwang v. Kansas State University*, 753 F.3d 1159 (10th Cir. 2014) .... 54

*Jackson v. Cal-Western Packaging Corp.*,
602 F.3d 374 (5th Cir. 2010) ...................................................... 56-57

*Mercado Cordova v. Walmart Puerto Rico, Inc.*,
369 F. Supp. 3d 336 (D.P.R. 2019) ................................................ 61

*Plumley v. Southern Container, Inc.*, 303 F.3d 364 (1st Cir. 2002) ..... 31

*Posadas de Puerto Rico, Inc. v. Radin*, 856 F.2d 399 (1st Cir. 1988) ... 60

*Reed v. AMAX Coal Co.*, 971 F.2d 1295 (7th Cir. 1992) ....................... 46

*Ricciardi v. Children's Hosp. Medical Center*,
811 F.2d 18 (1st Cir. 1987) .............................................................. 44

*Richards v. Combined Ins. Co. of Am.*, 55 F.3d 247 (7th Cir. 1995) .... 56

*Rios-Piniero v. United States*, 713 F.3d 688 (1st Cir. 2013) ........... 42, 45

*Solomon v. Vilsack*, 628 F.3d 555 (D.C. Cir. 2010) .............................. 40

*Suarez v. Pueblo Int'l, Inc.*, 229 F.3d 49 (1st Cir. 2000) ...................... 31

*Thompson v. Office of Personnel Management*,
208 F. App'x 937 (Fed. Cir. 2006) ........................................ 33, 34, 36

*United States v. Slade*, 980 F.2d 27 (1st Cir. 1992) .............................. 48

*United States v. Utah Constr. & Mining Co.*, 384 U.S. 394 (1966) ...... 46

*Warner v. Vance-Cooks*, 956 F. Supp. 2d 129 (D.D.C. 2013) ............... 58

*Yanovsky v. JPMorgan Chase*, Civil Action No. 13-11426-RGS,
2014 WL 2986655 (D. Mass. July 2, 2014) ....................................... 56

*Yochim v. Carson*, 935 F.3d 586 (7th Cir. 2019) .............................. 63-64

### Federal Statutes

5 U.S.C. § 8347 ............................................................... 33, 35

5 U.S.C. § 8461 .................................................................. *passim*

28 U.S.C. § 1291 ...................................................................... 1

28 U.S.C. § 1331 ...................................................................... 1

28 U.S.C. § 2107 ...................................................................... 2

29 U.S.C. § 794 ....................................................................... 1

### Federal Regulations

5 C.F.R. § 844.103 ......................................................... 38, 40, 43

29 C.F.R. § 1614.105 ......................................................... 41, 50

29 C.F.R. pt. 1630, App. ......................................................... 54

### Local Rules

D. Me. Local R. 27.0(c) ............................................................ 29

D. Me. Local R. 56(c) .................................................... *passim*

## REASONS WHY ORAL ARGUMENT SHOULD BE HEARD

Defendant-Appellee Denis McDonough, Secretary of the U.S. Department of Veterans Affairs ("Appellee" or the "VA") respectfully submits that oral argument should be permitted in this action, as it would aid the Court's decisional process.


DARCIE N. MCELWEE
United States Attorney


Dated:  April 24, 2023                    /s/ James D. Concannon
                                          Assistant U.S. Attorney

# JURISDICTIONAL STATEMENT

The United States District Court for the District of Maine (the "District of Maine") has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this case raises questions arising under the statutes of the United States. In particular, and of relevance to this present appeal, Appellant asserts disability discrimination arising under the Rehabilitation Act of 1973, 29 U.S.C. § 794 (the "Rehabilitation Act"). *See* AOB 1.[1]

The First Circuit Court of Appeals (the "First Circuit") has jurisdiction of this appeal pursuant to 28 U.S.C. § 1291 because the District of Maine entered a final judgment on July 13, 2022 that (1) denied Appellant's motion for partial summary judgment on all counts,

---

[1]     Citations herein are as follows: matters on the district court's docket as "Dkt. [#]"; Appellant's Addendum as "Add. [pg#]"; Appellant's Appendix as "JA[pg#]"; the VA's Supplemental Appendix as "VA[pg#]"; and Appellant's opening brief as "AOB [pg#]."

The appendix that Appellant filed on the First Circuit docket on January 24, 2023 is titled "Joint Appendix." That is a misnomer. Appellee was never consulted regarding the preparation of this appendix or its contents, and therefore it is not a "joint" appendix. Furthermore, as discussed *infra*, Appellee maintains that certain of the material in Appellant's appendix is inappropriate to include in any appendix before this Court, as that material was not part of the record before the district court, and Appellant has not sought leave of this Court to introduce material that was not part of the record below.

and (2) granted Appellee's motion for summary judgment on all counts. JA479; *see also* Add. 1.

Appellant timely appealed the District of Maine's July 13, 2022 order pursuant to 28 U.S.C. § 2107(b) by filing a notice of appeal on September 9, 2022. Dkt. 84.

2

## STATEMENT OF ISSUES PRESENTED

I.    WHETHER THE DISTRICT COURT ERRED IN DETERMINING THAT IT HAD JURISDICTION TO CONDUCT, AND WAS OTHERWISE NOT PRECLUDED FROM CONDUCTING, AN INDEPENDENT REVIEW OF THE FACTUAL RECORD IN ASSESSING THE PARTIES' MOTIONS FOR SUMMARY JUDGMENT.

II.   WHETHER, IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT, THE DISTRICT COURT ERRED IN DETERMINING THAT THERE WERE NO GENUINE ISSUES OF MATERIAL FACT THAT NECESSITATED A TRIAL.

## STATEMENT OF THE CASE

### I.     Statement of Facts[2]

#### A.     Appellant's work at Togus 2006-2014, injury, and MS diagnosis

Appellant began working at the Togus VA Medical Center

("Togus") in 2006 as a floor nurse assigned to the Nursing Home Care

Unit. JA479-481; VA3 ¶ 1. Following an incident in approximately 2007

or early 2008 in which a patient pulled Appellant to the ground,

injuring her neck and shoulder, Appellant was placed on light duty

restrictions. VA47-48 ¶¶ 3-4. In approximately August 2008, Appellant

returned to work at Togus with continued light duty restrictions and

was diagnosed with multiple sclerosis ("MS"). VA50-51 ¶ 11-12.

Appellant's MS causes Appellant to be sensitive to high temperatures.

JA482.

In approximately 2009, after Appellant discussed with a nurse

that she did not feel like her light duty restrictions were being met,

---

[2] The following facts are taken principally from the district court's July 13, 2022 order denying Appellant's motion for summary judgment, and granting the VA's motion for summary judgment, in which the district judge found these facts to be supported by record citations in accordance with District of Maine Local Rule 56.

Mary Anderson, then the Deputy Chief Nurse Executive, offered
Appellant a position in a quality management role. VA53-54 ¶¶ 16-17;
VA95 26:6-18. Appellant assumed that the quality management
position constituted an accommodation, but she had not at that point
made a formal written or verbal request for a reasonable
accommodation for any medical condition. VA54 ¶ 17; VA95 25:12-18;
26:17-27:6; VA97 50:4-23. Appellant's workspaces in quality
management, located in the nursing office, had central air-conditioning,
and she did not need to seek a reasonable accommodation for
temperature regulation. VA55 ¶ 18; VA95 28:20-24; VA96 29:22-30:4,
32:10-16; VA97 50:4-23).

In February 2014, Appellant was a "Nurse III" at Togus. JA481.
The VA categorizes nurses into five pay grades, from Nurse I to Nurse
V. JA481. Only certain nursing positions with a particular level of scope
and complexity render an employee eligible for promotion to Nurse IV
or V. JA481. As of 2014, there were only approximately five Nurse IV
positions at Togus. JA481.

The Chief Nurse Executive reviewed Appellant's position in
February 2014 for potential promotion to Nurse IV. JA481. She

determined that Appellant's role did not have the requisite scope and complexity for promotion to Nurse IV, and accordingly did not recommend Appellant for promotion. JA481.

### B.  Appellant's transfer to the CCD, issues with office temperature, and accommodations

In or around late 2014, Appellant began working in Togus's Non-VA Care Unit, later renamed the Community Care Department ("CCD"). JA481; VA8-9 ¶ 16. Her official reassignment to the CCD was effective January 11, 2015. VA9-10 ¶ 19. At approximately the same time she began working in this department, Appellant moved office spaces to "Room 216"—a small room without air conditioning or windows. JA482; VA10 ¶ 21. Within weeks of the move, Appellant began to have issues with the temperature in her new office. JA482; VA11 ¶ 24.

On July 8, 2015, Appellant emailed Dustin Cochran, the Reasonable Accommodation Coordinator at Togus, to complain about the temperature issues in her office. JA482; VA100 ¶ 5. In her email, she proposed three potential solutions: that she be given an air conditioner, that she be given a laptop (so that she could "travel to reasonable temperatures"), or that she be allowed to telework. JA482;

6

VA100 ¶ 5. Mr. Cochran responded that same day explaining the process for requesting a reasonable accommodation, and Appellant provided Mr. Cochran with a letter from her doctor explaining that, due to her MS, Appellant was "very sensitive to even moderately elevated temperatures" and needed "a work environment in which higher temperature is not a problem." JA482; VA100-101 ¶¶ 5-6. Appellant's doctor did not recommend any particular accommodation, but rather requested that the VA "make every effort to accommodate this requirement in any way that [it saw] fit." JA483; JA342.

On July 20, 2015—merely twelve days after Appellant first contacted Mr. Cochran—the VA issued an "Approval of Accommodation Request," which outlined a plan to move Appellant to a new office space—Room 218E—and to supply Appellant with an air conditioning unit so that the temperature in Appellant's office could be kept below seventy-two degrees. JA483; JA174.

In the fall of 2015, Appellant began to complain that her co-workers were bullying her, and also raised concerns that she was unable to control the temperature in Room 218E due to personality conflicts with other employees in that office. JA483. In response to

Appellant's complaints, Appellant's supervisor, Corey Vail, intervened and informed Appellant's officemates that the air conditioning unit in Room 218E needed to remain on and unobstructed to keep the room below seventy-two degrees. JA483; VA17 ¶ 37.

## C.    Appellant's misconduct issues and first discipline

Around this time, Mr. Vail began to notice that Appellant routinely got less work done than her colleagues who were performing similar duties, even though she regularly requested approval to work overtime. JA483. He also observed that Appellant often failed to arrive at work on time, and that she frequently left her workstation for lengthy periods of time during her tour-of-duty hours without notifying him of her whereabouts. JA483-484; VA19 ¶ 43.

In October 2015, after consulting with Mr. Cochran, Mr. Vail ordered an audit of Appellant's computer an internet usage for the period September 28, 2015, through October 27, 2015. JA484; VA19-20 ¶¶ 43-44.  This audit revealed that Appellant visited social media and shopping websites on her work computer on hundreds of occasions during her regular tour-of-duty hours and while she was working overtime. JA484; VA20 ¶ 46. Based on these findings, in late November

8

2015 Mr. Cochran and Mr. Vail concluded that Appellant had violated VA Directive 6001, titled "Limited Personal Use of Government Equipment Directive," and Mr. Vail proposed a five-day suspension. JA484; VA21 ¶ 47. In December 2015, Ryan Lilly, the Director of Togus, sustained the proposed suspension, but reduced it to three days. JA484; VA21 ¶ 48.

After he proposed the suspension, Mr. Vail continued to observe in late 2015 and early 2016 that Appellant had issues both with tardiness and staying on task throughout her tour of duty. JA484; VA22 ¶ 50. After verbally counseling Appellant about these issues on several occasions, Mr. Vail issued a memorandum to Appellant on January 4, 2016, clarifying expectations regarding her activities during her working hours. VA22-23 ¶ 51. After returning from suspension, Appellant's productivity increased, but it remained only approximately one-quarter of the productivity of one of her colleagues in the CCD. JA484; VA30 ¶ 69.

### D. Appellant's temperature issues in Room 218E and move to Room 313

During this same time period of late 2015 to early 2016, Appellant continued to express complaints regarding her workspace temperature.

9

JA484; VA23 ¶ 52. Mr. Vail, who worked down the hall from Room
218E and regularly checked to confirm the adequacy of the temperature
in the space, observed that when the air conditioning unit was turned
on, it cooled the room to below 72 degrees in accordance with
Appellant's approved reasonable accommodation. VA23 ¶ 53. He
nevertheless arranged for the purchase of a digital thermometer for
Appellant to track the temperature of the room, VA23-24 ¶ 54, and
ultimately moved another employee in the office to a different
workspace to lessen the possibility of conflicts in Room 218E over
temperature, VA24 ¶ 55.

Appellant continued to complain about the temperature in Room
218E, and so in early 2016 Mr. Vail and Mr. Cochran worked to identify
an alternative workspace large enough to accommodate an air
conditioning unit that did not blow directly on Appellant. JA484-485;
VA24 ¶ 56. Mr. Vail and Mr. Cochran identified Room 313 as an
appropriate alternative, given its availability, size, and ability to
accommodate an A/C unit, and on February 26, 2016, Mr. Vail advised
Appellant via email that to better accommodate her reasonable
accommodation, her new workstation was to be in Room 313 effective

March 11, but that she was free to move sooner. JA485; VA24-25 ¶¶ 57-58. However, Appellant testified that she did not use the air conditioner in Room 313 after a supervisor in the room (who was unaware of her temperature sensitivity) "hollered at [her]" for opening a window. JA485; VA25 ¶ 59.

### E. Appellant's March 2016 telework request, telework approval, and move to Quarters 32

On March 4, 2016, Appellant's doctor submitted a Written Confirmation of Request for Accommodation to Mr. Cochran, advising that he was recommending that Appellant be allowed to telework to allow her to take her medications (which prevented her from driving) as needed, and to assist her in being able to control the temperature in her workspace. JA485; VA25-26 ¶ 60. Upon receiving this request, Mr. Cochran consulted with Dr. Ray Lash in the VA's Occupational Health Division. JA485. Dr. Lash recommended "a trial of strict home temperature control" but did not specify how many days he thought Appellant should be permitted to telework. JA485; VA26 ¶ 62; JA280.

Ultimately, Mr. Cochran and Dr. Lash decided to allow Appellant to telework two days per week, based on her symptoms, on a six-month trial basis. JA485; VA27-28 ¶ 63; VA105 ¶ 23. On March 26, 2016, the

VA authorized Appellant to work from home two days per week as needed, and also agreed to provide Appellant with a new space at Togus for when she was working onsite. JA485-486; VA28 ¶ 64. By late April 2016, Appellant had been provided with the technology needed to telework, and the Chief of Togus's Facilities Division had located a private office in the "Quarters 32" building where Appellant could have sole control over a window air conditioning unit for the days she was onsite.  JA486; VA29-30 ¶¶ 67-68.

### F.    Workload adjustments, complaints regarding temperatures in Quarters 32

After Appellant began her telework schedule and was working in her new Quarters 32 office, Mr. Vail increased Appellant's workload to approximately one-third to one-half of that of her counterparts in the CCD in order to more closely align her workload with that of her coworkers. JA486; VA30-31 ¶ 70. However, by July 7, 2016, it became clear that, despite repeated counseling by Mr. Vail, Appellant was not keeping up with her workload, resulting in the delay of care to veterans. JA486; VA31 ¶¶ 71-72. Appellant complained that her workload was unreasonably high. JA486.

Around July of 2016, Mr. Vail reduced Appellant's workload to approximately one-quarter of that of her colleagues and asked one of Appellant's coworkers to work with her to ensure she understood certain aspects of her job. JA486-487; VA31-32 ¶¶ 71, 73-74. However, even after the reduction in workload, Appellant continued to struggle with completing her work in a timely and accurate manner. JA487; VA32 ¶ 75. She also continued to request permission to work overtime (and thereby earn comp time leave) to complete some of her work. JA487; VA32-33 ¶ 76.

Around the same time that Mr. Vail notified Appellant that he was decreasing her workload, Appellant complained that her reasonable accommodation for temperature control was not being met, based on her contention that the supplied air conditioning unit could not sufficiently cool her private office in Quarters 32. JA487; VA33 ¶ 77. In August 2016, Mr. Vail checked the temperature in Appellant's office in Quarters 32 on several days—including times when the outside temperature exceeded ninety degrees—and found that the air conditioner adequately cooled Appellant's office below seventy-two degrees, even when her office door was open. JA487; VA33 ¶ 78.

13

### G.    Allegations of Appellant's further misconduct, investigation

Also in late summer 2016, Mr. Vail received several reports from VA employees who had seen Appellant in the Togus community garden during the workday. JA487; VA33-34 ¶¶ 79-80. For example, one of Appellant's coworkers reported that all summer long Appellant would walk past the coworker's desk on her way to the garden at least twice per week, and would return from one to three hours later. JA487; VA35 ¶ 82. That coworker reported that on three separate days, during working hours, she drove past the garden and saw Appellant, only to drive past again two hours later and see Appellant again in the garden. JA487; VA35 ¶ 82. A different coworker reported stopping by Appellant's office and finding it empty, and when he returned to her office later, Appellant stated that she "went to my garden and got my tomatoes and brought them home." JA487; VA34-35 ¶ 81. Mr. Vail also observed that Appellant regularly appeared as "away" or "inactive" in Togus's internal chat application for several hours at a time, even when there was no apparent work-related reason for her to be away from her computer. JA488; VA35 ¶ 83.

Following these reports and observations, Mr. Vail requested an
audit of Appellant's computer records between April 29, 2016 and
September 8, 2016. JA488; VA36 ¶ 84. Mr. Cochran analyzed these
records with the assistance of IT and found that while a typical
employee is in an "away" or "inactive" status for approximately an hour
per day, Appellant's records showed that she was in an "away" status
for more than two hours on twenty-eight separate occasions in the
reviewed period. JA488; VA36-37 ¶¶ 86-87.

Based on the results of this audit and the reports of Appellant's
coworkers, Mr. Vail and Mr. Cochran decided to propose Appellant's
removal from federal service. JA488; VA37 ¶ 89. On September 21,
2016, Mr. Vail proposed Appellant's removal for "failure to put forth an
honest effort in the performance of [her] duties," based on (1) an audit
revealing that, over a five-month period, there were approximately 28
days when Appellant was logged off from her computer for more than
120 minutes per day; and (2) reports from other VA employees that
provided further evidence of Appellant's absence from work during her
scheduled tour of duty. JA488; VA37-38 ¶ 90; VA119.

**H.    Appellant's full time telework request, discussions with VA regarding options**

A few days after Mr. Vail wrote the letter proposing Appellant's termination, Appellant submitted a third reasonable accommodation request, this time requesting that she be permitted to telework full time. JA488; VA80 ¶ 71; JA283-284, 293. On October 13, 2016, Togus's Director of Human Resources, Jonathan Meserve, acknowledged receipt of this request and told Appellant that they would meet to discuss it. JA488-489; VA80 ¶ 72. He also advised her that, while it did not appear that her request was time-sensitive, Appellant should notify him immediately if that was not the case. JA489; VA81 ¶ 73. On October 26, 2016, Appellant met with one of Mr. Meserve's subordinates, Alan Lane, to discuss her request. JA489; VA81 ¶ 74. Five days later, Mr. Meserve sent Appellant a letter suggesting that one possible solution might be for Appellant to work in an area where the air conditioning unit did not blow directly on her; he asked for Appellant's feedback on this proposal. JA489; VA81 ¶ 75.

**I.    Appellant is removed from federal service**

While discussions regarding Appellant's third reasonable accommodation request were ongoing, Alfred Montoya, the Director of

16

the VA White River Junction Health Care System in Vermont, was

assigned to review the bases for Appellant's removal, as well as the

replies that Appellant provided. JA489; VA38-39 ¶¶ 93-95. In

evaluating the proposed removal, Mr. Montoya considered the reasons

Mr. Vail had provided, Appellant's years of service, her past work

record, the nature and seriousness of the charges against her, her past

disciplinary record, her medical condition, and the accommodations that

the VA had made for her. JA489; VA40-41 ¶¶ 98-100. Appellant

informed Mr. Montoya that she did not believe that her

accommodations had been consistently met, but Mr. Montoya did not

find her version of the events to be credible, especially in light of

photographs that Mr. Vail provided showing that the temperature in

Appellant's office was below seventy-one degrees on multiple days.

JA489; VA41 ¶ 101. Similarly, Mr. Montoya did not find Appellant's

attempts to explain her lengthy "time away" periods from her computer

to be credible, based upon the extensive computer logs provided in the

evidence file, as well as the statements from other employees who had

observed Appellant in the community garden on multiple occasions

during her normal tour-of-duty hours on hot summer days. JA489-490;

VA42 ¶¶ 102. Mr. Montoya ultimately agreed with the proposed

removal and, on November 3, 2016, he issued a final written

notification of removal. JA490; VA40 ¶¶ 97-98.

## J.   The EEO investigation

On March 17, 2016, Appellant initiated contact with the VA's

Office of Resolution Management ("ORM"). JA490; VA26 ¶ 61. In June

2016, Appellant filed a Complaint of Employee Discrimination alleging

a hostile work environment due to her disability. JA490. In support of

her allegations, Appellant pointed to five events: (1) the VA's alleged

failure to comply with her approved reasonable accommodation; (2) her

December 2015 suspension; (3) the alleged denial of her March 2016

request for full-time telework; (4) her relocation to Room 313 in March

of 2016; and (5) the increase in her workload in late spring/early

summer of 2016. *Id.*; VA66 ¶ 36; JA69-70. ORM determined that

Appellant's hostile work environment claims were inadequate because

she did not allege any conduct that was sufficiently severe or pervasive

to constitute a hostile work environment. JA490; VA83 ¶ 85; JA70.

However, ORM accepted events one, three, and five "for investigation as

independently actionable claims." JA490; VA82 ¶ 83; JA70.

On January 26, 2017, Appellant's counsel contacted ORM requesting amendment of Appellant's complaint. JA491; VA83 ¶ 88. Specifically, Appellant's counsel sought to add claims of disability discrimination and reprisal based on (1) Appellant's reassignment to the CCD in January 2015; (2) her non-promotion to Nurse IV in 2014; and (3) her termination. JA491; VA83 ¶ 88; VA122. As to the first claim, ORM concluded that it was untimely, as Appellant had failed to contact an EEO counselor within forty-five days of her reassignment, and accordingly ORM dismissed the claim. JA491; VA83 ¶ 90; VA122-123. With respect to the second and third claims, ORM concluded that such claims were not sufficiently related to the original claims to qualify as amendments, and therefore it denied Appellant's request to amend the original complaint to add such claims. JA491; VA83-84 ¶ 91; VA123. Instead, Appellant's second and third claims were referred back to the EEO counseling stage as a separate complaint, JA491; VA83-84 ¶ 91; VA123, and ultimately in June of 2017 Appellant filed a second complaint containing those two claims, JA491; VA84 ¶ 95.

Both complaints were investigated, and reports of investigation for each complaint were issued. VA84-85 ¶¶ 92, 97-98. Appellant

requested hearings before an EEOC Administrative Law Judge ("ALJ")

with respect to both of her complaints, VA84-85 ¶¶ 93, 99, and on

February 27, 2019, following consolidation of the two complaints, the

assigned ALJ set a pre-hearing conference, VA85 ¶ 100. On June 21,

2019, the VA moved for summary judgment on all claims asserted by

Appellant. VA85 ¶ 101. Appellant did not file a response, and on August

1, 2019, the ALJ granted the VA's motion for summary judgment. VA85

¶¶ 102-03. On August 6, 2019, the VA issued a final agency decision

accepting and fully implementing the ALJ's decision. VA85 ¶ 104. This

civil action followed.

## K.    Appellant's application for disability retirement benefits

While the EEO investigative process was underway, Appellant

filed an application for disability retirement with the Office of

Personnel Management ("OPM") under the Federal Employee

Retirement System ("FERS"). JA491. OPM denied Appellant's

application for disability retirement benefits on March 25, 2019, and

Appellant appealed OPM's decision to the Merit Systems Protection

Board ("MSPB"). JA434. On May 14, 2019, the MSBP issued an initial

decision that dismissed Appellant's appeal on the grounds that,

effective May 14, 2019, OPM had rescinded its March 25, 2019 decision,

thus depriving the MSPB of jurisdiction. JA460. OPM ultimately

determined that Appellant had "submitted sufficient documentation to

establish [her] entitlement to disability retirement benefits under the"

FERS and granted her "a disability retirement benefit," which was

formally approved a week later. JA434-435; JA443-447.

## II.    Procedural History

Appellant's civil action was filed on November 8, 2019. Appellant

alleged disability discrimination (Count One), a hostile work

environment (Count Two), Title VII retaliation (Count Three), and

"Collateral attack and abuse of authority" (Count Four). Dkt. 1; JA16-

JA18. On August 2, 2021, the district court held a Local Rule 56(h) Pre-

Filing Conference (the "56(h) Conference"), during which Appellant's

counsel clarified that Count Three was intended to be a retaliation

claim under the Rehabilitation Act, not Title VII, VA90 at 10-17, and

Count Four was intended to be a failure to accommodate claim under

the Rehabilitation Act. VA91 at 23 - VA92 at 4. Appellant's counsel also

clarified—twice—that the only adverse actions underlying the claim of

disability discrimination in Count One were (1) Appellant's non-

promotion to Nurse IV, (2) the increase in Appellant's workload in late spring/early summer of 2016, and (3) Appellant's termination. VA92 at 5-25; VA93 at 14-17.

On February 22, 2022, Appellant filed a motion for summary judgment as to all of Appellant's claims. As to Count One, Appellee principally argued that it had legitimate, nondiscriminatory reasons for each of the three adverse actions—the non-promotion, increase in workload, and termination—identified by Appellant. Dkt. 61 at 17-20. Regarding Count Two, Appellee argued that several of the acts Appellant identified as contributing to the allegedly hostile work environment constituted "discrete acts" that could not be subsumed under a hostile work environment theory, and that the remaining supporting allegations lacked any connection to Appellant's disability and, in any event, were insufficiently severe or pervasive to sustain a hostile work environment claim. Dkt. 61 at 24-25. As to Count Three, Appellee again pointed to the legitimate, non-discriminatory reasons that the allegedly retaliatory actions (again, Appellant's non-promotion, the increase in Appellant's workload, and Appellant's termination) were taken, and additionally noted that Appellant's retaliation allegations

based on the non-promotion failed because there was no evidence that, as of February 2014, Appellant had engaged in any protected activity under the Rehabilitation Act. Dkt. 61 at 17-20. Finally, in addressing Count Four, Appellee argued that the relevant evidence established that the VA provided multiple accommodations to Appellant that were reasonable as a matter of law, and that Appellant therefore could not prove a lack of reasonable accommodation. Dkt. 61 at 20-23.

On February 18, 2022, Appellant filed her own motion for summary judgment. JA401. Appellant argued this case was governed by the Administrative Procedures Act ("APA"), and that the district court lacked jurisdiction to second-guess any of the factual findings made by OPM in making its administrative decision, and furthermore that "issue preclusion-res judicata" also precluded the district court from revisiting those findings. JA419-422. Appellant then contended that the undisputed facts supported summary judgment as to each of her claims. JA422-431.

On July 22, 2022, the district court granted Appellee's motion for summary judgment and denied Appellant's. JA479. The court began by noting that because Appellant failed to respond to Appellee's statement

23

of additional undisputed facts (filed in response to Appellant's statement of material facts), Appellee's additional proposed facts were all deemed admitted for purposes of Appellant's motion. JA480 n.2. The court also granted Appellee's motion to strike a number of Appellant's statements of fact that were not supported by any citations to the record. JA480 n.2. As to Appellee's statement of facts, the court found that because Appellant failed to offer citations to the record for 41 of its denials, those 41 facts were deemed admitted. JA480 n.2.

The district court next addressed Appellant's jurisdictional argument, and determined that it was "based on the faulty premise that 'OPM determined [Appellant] was not reasonably accommodated in the position from which she was removed'"—a claim for which Appellant offered no record support. JA498. The court also rejected Appellant's *res judicata*/issue preclusion arguments, noting that there was no evidence suggesting that OPM was acting in a judicial capacity when it evaluated Appellant's eligibility for disability retirement. JA498-499.

The court then addressed the parties' contending merits arguments. As to Appellant's discrimination claims, the court focused on the legitimate, non-discriminatory reasons offered by Appellee for

the three adverse actions Appellant had identified. As to each of the actions, the court concluded that Appellee had provided legitimate, nondiscriminatory reasons for taking the actions; that Appellant had failed to put forward any credible evidence that Appellee's proffered reasons were pretextual; and that summary judgment in Appellee's favor was therefore appropriate on Count One. JA500-JA506. Regarding Appellant's retaliation claim (Count Three), the court found that, as with the discrimination claims, Appellee put forth legitimate, nonretaliatory reasons of the allegedly adverse actions; that Appellant failed to identify any evidence of pretext; and that Appellee was entitled to summary judgment on this count, as well. JA506-508. On Count Two—Appellant's hostile work environment claim—the court began by identifying the events on which the claim was based: (1) the VA's audits of Appellant's computer and the resulting discipline; (2) the posting of demeaning signs by Appellant's co-workers upon her return from suspension; (3) Mr. Vail and Mr. Cochran's responses to Appellant's complaints about the temperature in her office and her coworker's alleged actions to interfere with her ability to control the temperature; (4) the VA's alleged refusal to grant Appellant's requested

accommodation for full-time telework; (5) the VA's allegedly slow response time in granting Appellant's original reasonable accommodation request; and (6) the VA's alleged failure to provide Appellant with an adequate laptop. JA508. The district court determined that four of these events—the first, fourth, fifth, and sixth—could not properly factor into Appellant's hostile work environment claim. The court held that the first event involved legitimate discipline as a result of Appellant's misconduct, while the fourth event was not supported by the record, as the VA never refused to grant Appellant's request for full-time telework. JA509-510. The court determined that the fifth alleged event was frivolous, because Mr. Cochran approved Appellant's July 2015 accommodation request less than two weeks after the request was made, and Appellant was moved to a new office only a few weeks later.  JA510. Regarding the sixth event, the court held that "it strains credulity to say that a slow laptop can be a contributor to a hostile work environment," noting the demanding standard for establishing a hostile work environment claim. JA510.

This left only the second and third events for evaluation—the posting of demeaning signs about Appellant's suspension and Mr. Vail

and Mr. Cochran's allegedly inadequate responses to Appellant's complaints about how she was treated in Room 218E. The court determined that, even taking as true Appellant's contentions that she was bullied in Room 218E and that those in management did not do enough to address this behavior, a reasonable jury could not find that the bullying Appellant allegedly suffered and the purportedly inadequate response was sufficiently pervasive to alter the conditions of her employment. JA510-511. Additionally, the court held that even if the alleged behavior could meet that high bar, Appellant offered no evidence that such conduct occurred *because of* her protected characteristic (in this case, her disability), nor that her coworkers even knew of her disability. JA510-511. Accordingly, the court held that Appellee was entitled to summary judgment on Count Two. JA511.

As to the final count—Appellant's failure to accommodate claim— the court found that Appellee was entitled to summary judgment as well. The court cataloged the various accommodations provided by the VA and found that the undisputed facts established that "the VA made multiple, serious efforts" to accommodate Appellant's disability. JA512-513. The court took "as true [Appellant's] contentions that, on occasion,

these accommodations came up short," but noted that Appellant pointed to "no authority for the idea that an employer is liable for imperfect accommodations even when making reasonable efforts to perfect them," and noted that such a premise "is in tension with the idea that the accommodation process is supposed to involve negotiation between the parties to come to a solution that meets everyone's needs." The court ultimately concluded that "no reasonable juror could find that the VA's efforts to accommodate [Appellant's] disability were legally deficient." JA513. The court also addressed Appellant's complaint that the VA never granted Appellant's request to telework full time. It noted that this argument ignored all that the VA *did* do to try to accommodate Appellant, and that such actions were consistent with the requests that Appellant and her physician made. JA513-514. Although Appellant maintained that she should have been allowed to telework full-time "from the get-go," the court observed that the law did not require the VA to provide an employee with *any* accommodation she requested, but only a *reasonable* accommodation. JA514-515.

With all of Appellant's claims having been addressed, the court granted Appellee's motion for summary judgment in full and denied Appellant's. Appellant now appeals.

## SUMMARY OF THE ARGUMENT

This Court should affirm the decision of the court below.[3]

<u>First</u>, there is no basis for concluding that the district court lacked jurisdiction to allow, or was otherwise precluded from considering, a motion for summary judgment from the VA as a consequence of OPM's decision regarding Appellant's application for disability retirement benefits. Appellant's interpretation of 5 U.S.C. § 8461(d) as stripping a federal district court of the ability to independently assess facts and arguments presented to it by parties in an original civil action, filed in that court's district and alleging violation of the Rehabilitation Act, is unprecedented and incorrect. Additionally, due to the non-judicial nature of the proceedings before OPM, as well as the complete lack of record evidence regarding the content of those proceedings and the

---

[3] Summary affirmance would also be appropriate pursuant to Local Rule 27.0(c), whereby the Court either dismisses the appeal or summarily affirms the district court's decision, as "no substantial question is presented" by Appellant's appeal.

reasoning used by OPM to come to its determination regarding Appellant's disability retirement application, issue preclusion cannot apply. The district court was obligated to conduct an independent review of the factual record developed by the parties to determine whether there were genuine issues of material fact for trial.

Second, the undisputed evidence demonstrated that the VA provided Appellant with multiple accommodations that were reasonable as a matter of law and did not otherwise discriminate or retaliate against Appellant. Appellant's allegations of error rely on the import of claims that she failed to procedurally exhaust; mischaracterizations of witness statements; a single vague, unsigned and unsworn witness statement from an administrative proceeding; and misinterpretations of federal statutes and the law regarding issue preclusion. The district court was correct in determining that there were no genuine issues of material fact that would necessitate a trial.

## ARGUMENT

## I.    STANDARD OF REVIEW

"The role of summary judgment is to look behind the façade of the pleadings and assay the parties' proof in order to determine whether a

trial is required." *Plumley v. Southern Container, Inc.*, 303 F.3d 364, 368 (1st Cir. 2002) (internal citation omitted). The appellate court reviews the district court's decision to grant summary judgment *de novo, Suarez v. Pueblo Int'l, Inc.*, 229 F.3d 49, 53 (1st Cir. 2000), and uses the same criteria as the trial court to determine whether an issue of material fact exists, *Cox v. Hainey,* 391 F.3d 25, 29 (1st Cir. 2004) (internal quotation marks omitted). Finally, the appellate court may sustain the grant of summary judgment "on any basis the record supports," including one not relied on by the district court. *Collazo-Rosado v. University of Puerto Rico*, 765 F.3d 86, 92 (1st Cir. 2014).

Although "properly documented facts [are considered] in the light most favorable to the nonmovant, [the appellate court will not] indulge in rank speculation or unsupportable hyperbole." *Conward v. Cambridge Sch. Comm.*, 171 F.3d 12, 18 (1st Cir. 1999). "A properly supported summary judgment motion cannot be defeated by relying upon conclusory allegations, improbable inferences, acrimonious invective, or rank speculation." *Ahern v. Shinseki*, 629 F.3d 49, 54 (1st Cir. 2010) (citations omitted); *see Fantini v. Salem State Coll.*, 557 F.3d 22, 26 (1st Cir. 2009). Further, "[a] genuine dispute of material fact can

be created only by materials of evidentiary quality." *Hannon v. Beard*, 645 F.3d 45, 49 (1st Cir. 2011); *see also Garcia-González v. Puig-Morales*, 761 F.3d 81, 97 (1st Cir. 2014) (same).

## II.   THE DISTRICT COURT CORRECTLY APPLIED THE SUMMARY JUDGMENT STANDARD IN ASSESSING THE PARTIES' MOTIONS FOR SUMMARY JUDGMENT.

Appellant resurrects the arguments she made before the district court concerning that court's ability to independently assess the factual record that the parties have created through the discovery process. In Appellant's view, OPM conclusively determined the relevant disputed issues of fact as part of Appellant's disability retirements benefits process, and the district court was bound by that determination. The court correctly found that there is no merit to this argument, and that it was not bound by any determinations that may have been made by OPM during Appellant's disability retirement benefits process.

### A.   Section 8461(d) of Title 5 of the United States Code Is Inapplicable to This Action.

Appellant's argument that the district court could not independently consider the factual record that the parties developed in this matter appears to be based on an interpretation of federal law that is applicable to challenges to OPM's disability retirement benefit

32

determinations in the disability retirement appeals process. The court properly determined that because this is an original civil action and not a disability retirement appeal, Appellant's arguments fail.

Appellant maintains that 5 U.S.C. § 8347(c) and 5 U.S.C. § 8461(d) "prohibit review of OPM disability determinations; they are final and conclusive and not subject to review; except by the OPM/U.S. Merit Systems Protection Board . . . remedial process which provides employees with adequate administrative remedy." AOB 27. Appellant cites a case from the United States Court of Appeals for the Federal Circuit, *Thompson v. Office of Personnel Management*, 208 F. App'x 937 (Fed. Cir. 2006), which appears to contain the type of reasoning he believes the district court should have applied.

In *Thompson*, OPM denied the petitioner's disability retirement benefits under FERS, and the MSPB affirmed. *Id.* at 938. The petitioner then appealed to the Federal Circuit. The Federal Circuit, noting that it "does not review factual determinations in disability retirement cases," dismissed for lack of jurisdiction. *Id.* In arriving at that determination, the court reasoned:

> Section 8461 of Title 5 governs disability retirement appeals
> such as Mr. Thompson's. 5 U.S.C. § 8461(d). This court has

33

> held that it is "precluded by 5 U.S.C. § 8461(d) from reviewing the factual underpinnings of physical disability determinations, but may address whether there has been a substantial departure from important procedural rights, a misconstruction of the governing legislation, or some like error going to the heart of the administrative determination. This standard applies to reviews of disability determinations under the [CSRS] as well as the FERS.

*Id.* at 939 (internal citation and quotation marks omitted).

This appears to be the type of reasoning and analysis that Appellant argues the district court should have applied. In Appellant's view, OPM made a disability determination—specifically, that "[Appellant] was not reasonably accommodated in the position the VA had placed her in January 2015," AOB 28—and that because Appellee sought to challenge the "factual underpinnings" of this determination, the district court—like the Federal Circuit in *Thompson*—should have declined to do so.

The most obvious defect with this argument is that this is not a matter like *Thompson* in which a federal court is being asked to review the correctness of OPM/MSPB's FERS decision. As the district court noted,

> Section 8461 grants OPM the right to "determine questions of disability and dependency arising under the provisions of this chapter" and says that OPM's decisions "concerning

34

> these matters are final and conclusive and are not subject to
> review." 5 U.S.C. § 8461(d). "[T]his chapter" refers to the
> chapter in which § 8461 is housed, Chapter 84, which is
> entitled "Federal Employees' Retirement System." As I
> understand the language in § 8461, I cannot review OPM's
> decisions "arising under" that Federal Employees'
> Retirement Systems chapter. But the Plaintiff has not asked
> me to review the correctness of OPM's FERS decision (which
> is the decision § 8461(d) applies to), so I do not understand
> what applicability this statute could have to this case.

JA497 n.13. Appellant describes this statement by the court as "odd,"

because there would be no reason for her to ask the court to review

OPM's decision when "she prevailed at the MSPB." AOB 35. But

Appellant misses the court's point, which is that the statute upon which

Appellant relies, § 8461, is applicable only to matters "arising under"

Chapter 84—not to matters "arising under," for instance, the

Rehabilitation Act, the federal civil rights statute pursuant to which

Appellant brought her claims in federal district court.[4]

---

[4] In her brief, *see* AOB 33-34, Appellant appears to interpret the district
court's footnote thirteen to mean that it refused to consider the
applicability of 5 U.S.C. § 8461—applicable to FERS—because
Appellant "repeatedly cites to 5 U.S.C. § 8347," which "applies to
disability determinations under the Civil Service Retirement System,
not FERS." JA497 n.13. This is not the case, however. As the court
made clear, it assumed Appellant meant to cite 5 U.S.C. § 8461, and it
went on to "address the [Appellant's] arguments in the context of that
statute." JA497 n.13.

As the Federal Circuit in *Thompson* correctly noted, "Section 8461 of Title 5 governs disability retirement appeals," which in that case—a disability retirement appeal—was controlling. 208 F. App'x at 939. But Appellant has cited no cases in support of her position that § 8461 governs actions brought pursuant to the Rehabilitation Act (or any other federal civil rights statute). And for good reason: no such cases exist.

Because this is not a disability retirement action arising under Chapter 84, the statute that Appellant claims constrains the district court's discretion in analyzing the facts of Appellant's Rehabilitation Act case is inapplicable, and the district court correctly determined that it had jurisdiction to independently evaluate the factual record developed by the parties.

### B. OPM's Decision on Appellant's Application for Disability Retirement Benefits Is Not Determinative of Any Issue or Claim in This Action.

While Appellant's main argument on appeal challenging the district court's ability to conduct an independent review of the underlying facts of this case appears to focus on 5 U.S.C. § 8461(d) and the district court's jurisdiction, Appellant also argues more generally

that because OPM presumably made certain factual determinations regarding Appellant's claims and Appellee's defenses in evaluating Appellant's disability retirement application, OPM's determinations with respect to such issues have preclusive effect and therefore should have been accepted by the district court. This line of argument fails for several reasons.

To be eligible for a disability annuity under FERS, an individual must meet the following requirements:

(1)  The individual must have completed at least 18 months of civilian service that is creditable under FERS, as defined in § 842.304 of this chapter;

(2) The individual must, while employed in a position subject to FERS, have become disabled because of a medical condition, resulting in a deficiency in performance, conduct, or attendance, or if there is no such deficiency, the disabling medical condition must be incompatible with either useful and efficient service or retention in the position;

(3) The disabling medical condition must be expected to continue for at least 1 year from the date the application for disability retirement is filed;

(4) Accommodation of the disabling medical condition in the position held must be unreasonable; and

(5) The individual must not have declined an offer of reassignment to a vacant position.

5 C.F.R. § 844.103(a). Appellant's argument appears to be as follows.
First, that Appellant's previous position in quality management was a
position in which Appellant had a reasonable accommodation for her
MS, and in which she was a qualified individual with a disability.[5] AOB
7. Second, that she was unilaterally transferred to the CCD, a position
where the VA could not accommodate her disability, AOB 22, 24,
thereby satisfying the fourth prong of the FERS disability analysis.
Third, that she then experienced work deficiencies that were not, as the
VA claimed, the result of misconduct, but rather a result of "the VA's
inability to reasonably accommodate her MS and SD disabilities in" the
CCD, AOB 29, thereby satisfying the second prong of the FERS
disability analysis. Fourth, that the VA used "false allegations of work
dishonesty" to terminate Appellant for her work deficiencies. AOB 3, 24.

---

[5] In support of this position, Appellant cites the May 6, 2011 letter from
Christine Miller offering Appellant a permanent position. The letter is
titled "Subject: Permanent Reassignment Job Offer." JA452. In his
citation, Appellant describes this document as "A Permanent
Reassignment Job Offer *to accommodate MS* and acceptance." AOB at 7
n.6 (emphasis added). This is misleading. In fact, the letter makes no
reference whatsoever to MS, and also makes no reference to
accommodation. There is nothing in the letter—or in any of the other
documentation on which Appellant relies—that suggests that Appellant
had a reasonable accommodation for her MS while working in the
quality management role.

Fifth, that OPM ultimately found that Appellant satisfied the five FERS requirements and was entitled to disability retirement—a finding that necessarily showed that Appellant had been placed "in a position where she could not be accommodated," and which "proved [Appellant's] claim that the VA's allegations of dishonesty were false and her alleged work and attendance deficiencies were due to its failure to reasonably accommodate her MS." AOB 24. Sixth, that OPM's decisions that it necessarily made in arriving at its decision to award Appellant disability retirement benefits were final and unreviewable on statutory (discussed *supra*) and issue preclusion[6] grounds. AOB 37.

This line of argument suffers from myriad fatal defects. First, OPM's decision to grant Appellant's disability retirement benefits actually weakens, not strengthens, Appellant's Rehabilitation Act claims. The Rehabilitation Act requires, as an essential element, that a plaintiff provide she is a "qualified individual with a disability—that is,

---

[6] Appellant made (and continues to make) non-specific references to "issue preclusion-*res judicata*." *See* JA422. Because Appellant appears to be arguing that Appellee is attempting to relitigate *issues* decided by OPM and not *claims*, Appellant is making a collateral estoppel/issue preclusion argument. *See Gonzalez-Pina v. Rodriguez*, 407 F.3d 425, 429 (1st Cir. 2005) (discussing elements of *res judicata* and collateral estoppel doctrines).

a person who, with or without reasonable accommodation, can perform the essential functions of her job." *Bangura v. Shulkin*, 334 F. Supp. 3d 443, 461 (D. Mass. 2018) (citing *Rios-Jimenez v. Principi*, 520 F.3d 31, 41 (1st Cir. 2008)). By contrast, an employee who is able to fulfill the duties of her position with a reasonable accommodation is ineligible for FERS disability retirement benefits. *See* 5 C.F.R. § 844.103(a)(4).  Some courts have therefore held that the representations and requirements necessary to obtain a disability annuity under FERS are in tension with the showing that an individual must make to obtain relief under the Rehabilitation Act. *See, e.g.*, *Solomon v. Vilsack*, 628 F.3d 555 (D.C. Cir. 2010) (although a plaintiff who seeks a FERS disability annuity is not automatically precluded from recovering under the Rehabilitation Act, statements made in support of a FERS application can conflict with the showing required to prevail on an accommodation claim under the Rehabilitation Act). Thus, OPM's decision concluding that Appellant is eligible for disability retirement benefits implicitly establishes that there was *no* scenario in which the VA could have provided an accommodation that would have allowed her to perform the duties of

40

her position—a finding that is directly at odds with what Appellant needs to establish to prevail on her Rehabilitation Act claims.[7]

A second failing of Appellant's argument is that, based on the summary judgment record and a plain reading of the applicable regulation, it is not at all clear that OPM came to all—or any—of the conclusions Appellant tries to attribute to it in reaching its decision on Appellant's disability retirement application. Under the doctrine of collateral estoppel, "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Gonzalez-Pina v. Rodriguez*, 407 F.3d 425, 430 (1st Cir. 2005). For collateral estoppel to apply, a court must find 1) "that both the prior and subsequent proceedings involved 'the *same issue* of law or fact;' 2) that 'the parties *actually litigated*' the issue in the prior proceeding; 3) that the prior proceeding '*actually resolved* the issue in a final and binding

---

[7] To the extent Appellant is attempting to save her claim by relying on the January 2015 transfer from the position in which she alleges she could be accommodated to a new position in which she alleges she could not be, as discussed *infra* at Part III.A, Appellant failed to initiate contact with an EEO Counselor within 45 days of the effective date of the transfer as required by 29 C.F.R. § 1614.105(a)(1), and she is therefore barred from litigating this claim in court. *See* JA506 n.20.

judgment'; and 4) that 'its resolution of that issue of law or fact was *essential* to its judgment.'" *Rios-Piniero v. United States*, 713 F.3d 688, 692 (1st Cir. 2013) (quoting *Monarch Life Ins. Co. v. Ropes & Gray*, 65 F.3d 973, 978 (1st Cir. 1995)).

While Appellant maintains that a finding of FERS entitlement necessarily means that Appellant's performance deficiencies were *solely* a result of Appellant's medical condition (to satisfy the second FERS requirement), Appellant pointed to nothing in the record evidence suggesting that this necessarily is the case; OPM presumably could have found, for example, that Appellant's medical condition caused her to be able to do only one quarter of the amount of work as her co-workers in the CCD, while also finding that the allegations of work dishonesty were substantiated *and also* caused *additional* deficiencies in performance.[8] In other words, under a plain reading of the second

---

[8] Indeed, as the district court noted, "the VA has never—not in its initial termination decision or in this litigation—justified [Appellant's] termination based on her ability to complete her work. And the Appellant never argues, or points to any evidence in the Record, to the contrary." JA504. In other words, although the VA faulted Appellant for her failure to put forth an honest effort in the performance of her duties, it did not fault her for her inability to complete only a fraction of the workload of other employees in her department.

42

FERS requirement—a reading that was not contradicted by any of the record evidence before the district court—so long as at least *some* of Appellant's deficiencies "in performance, conduct, or attendance" are a result of Appellant's medical condition, a finding of FERS disability retirement eligibility is not precluded; that Appellant may have had other deficiencies in performance, conduct, or attendance *not* caused by her medical condition would not, at least on the face of the regulation, render her ineligible for a FERS disability annuity. *See* 5 C.F.R. § 844.103. Under this reading, because OPM therefore could have found that Appellant had deficiencies in performance caused by both her medical condition *and* work dishonesty, while still finding her eligible for FERS disability retirement benefits, whether Appellant had engaged in work dishonesty would not be an issue that OPM necessarily would had to have resolved.[9] Accordingly, OPM could have arrived at its

---

[9] To go a step further, it is not clear from the face of the regulation that it would even be appropriate for OPM to make findings with respect to work dishonesty, as this arguably would require OPM to go beyond the scope of its regulatory mandate. Under a plain reading of the second prong of § 844.103, all that must be determined in the deficiency analysis is whether the individual's "medical condition . . . result[ed] in a deficiency in performance, conduct, or attendance." After making that determination, OPM presumably would need to go no further.

result without "actually litigat[ing]" the work dishonesty issue and without "actually resolv[ing]" that issue in a final and binding judgment. Collateral estoppel therefore would not apply, and the district court would not be precluded from independently evaluating the issue of Appellant's work misconduct.

This example merely highlights a fundamental problem with Appellant's argument: the district court was not provided with any evidence establishing (1) what evidence OPM did or did not consider in finding that Appellant was eligible for disability retirement benefits,[10] or (2) precisely *how* it determined that Appellant satisfied each of the five requirements for a FERS disability annuity entitlement finding.

---

[10] As noted *supra* at n.1, Appellant has included in his appendix material that was not part of the record before the district court. The documents at issue appear at JA468-478. These materials seem to consist of MSPB appeal forms, and include what purports to be an OPM decision denying Appellant's motion to reconsider the denial of her disability retirement application. Appellant has not sought leave of this Court to introduce material that was not part of the record below. Accordingly, the Court should not consider this material, as its inclusion in the appendix is wholly improper. *See, e.g.*, *Geoffroy v. Town of Winchendon, Massachusetts*, 959 F.3d 1, 6 (1st Cir. 2020) ("We do not rely on any facts not before the district court at summary judgment."); *Ricciardi v. Children's Hosp. Medical Center*, 811 F.2d 18, 24 (1st Cir. 1987) (declining to consider deposition testimony which was not before the district court).

OPM's May 21, 2019 letter informing Appellant that her application for disability retirement had been approved contained "no factual findings or legal conclusions of any kind," JA498; *see* JA443, and OPM's May 14, 2019 motion to dismiss Appellant's appeal before the MSBP simply stated that it "has determined that the appellant has submitted sufficient documentation to establish [her] entitlement to disability benefits under [FERS]," JA434. It was therefore impossible for the district court to determine whether the OPM analysis even addressed "the same issue of law or fact" that the court was faced with deciding, and even assuming that it did, it remained unclear whether OPM "actually resolved" the issue, and—again assuming that criteria was met—whether "its resolution of that issue . . . was *essential* to its judgment." *Rios-Pineiro*, 713 F.3d at 692. To have accepted Appellant's arguments regarding what OPM "must have" found in arriving at its eligibility determination would have required the district court to accept Appellant's cascade of unsupported inferences and ultimately engage in outright speculation.

Finally, the entire focus on what OPM did or did not—or could or could not—find in arriving at its eligibility determination ultimately is

an academic exercise, because even if OPM's grant of benefits had the

factual import Appellant contends, such a finding would not have any

preclusive effects in this civil action. The U.S. Supreme Court has held

that agency decisions may be given preclusive effect in subsequent

lawsuits brought in federal court *if* the agency in question was acting in

a judicial capacity and "resolved disputed issue of fact properly before it

which the parties have had an adequate opportunity to litigate." *United

States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422 (1966). An

agency acts in a judicial capacity, as required for its decision to have

collateral estoppel effect, when its proceedings include safeguards such

as "(1) representation by counsel, (2) pretrial discovery, (3) the

opportunity to present memoranda of law, (4) examinations and cross-

examinations at the hearing, (5) the opportunity to introduce exhibits,

(6) the chance to object to evidence at the hearing, and (7) final findings

of fact and conclusions of law." *Reed v. AMAX Coal Co.*, 971 F.2d 1295,

1300 (7th Cir. 1992) (per curiam); *see also Delamater v. Schweiker*, 721

F.2d 50, 53 (2d Cir. 1983) ("An action taken by an administrative

agency to grant or deny a benefit is not an adjudicated action unless the

agency has made its decision using procedures substantially similar to

those employed by the courts."). Courts have held that OPM does not act in a judicial capacity when the agency issues a benefits-entitlement ruling on the papers, based on an employee's application and documentary evidence, without providing the employing agency with the opportunity to conduct pretrial discovery, present memoranda of law, conduct witness examinations, or object to any evidence presented. *See, e.g.*, *Buckley v. United States*, 51 Fed. Cl. 174, 189-91 (Fed. Cl. 2001) (OPM's on-the-papers ruling on law enforcement officer credit that was never reviewed by the MSPB on the merits does not have collateral estoppel effect).

Here, Appellant failed to present any evidence to the district court indicating that OPM conducted a hearing on Appellant's application for disability retirement benefits or that the VA had the opportunity to present or question witnesses before OPM issued its decision. And, it is undisputed that the MSPB dismissed Appellant's appeal on procedural grounds, without ever delving into the merits of her application for disability benefits. In such circumstances, OPM clearly was not acting in a judicial capacity. Thus, any factual findings that may have

undergirded OPM's grant of Appellant's FERS application do not control the outcome of Appellant's Rehabilitation Act claims.

## C.     Appellant's Standing Arguments Are Waived.

Appellant argues that Appellee "lacks standing to challenge OPM's reversal of its suitability determination and removal of" Appellant. AOB 31-33. Appellant failed to raise this standing argument before the district court, and it is therefore waived. *United States v. Slade*, 980 F.2d 27, 30 (1st Cir. 1992) ("It is a bedrock rule that when a party has not presented an argument to the district court, she may not unveil it in the Court of Appeals."); *see also Forsythe v. Wayfair Inc.*, 27 F.4th 67, 76 n.10 (1st Cir. 2022) (holding that argument not raised in, or addressed by, district court was waived).

## III.   THE DISTRICT COURT CORRECTLY ASSESSED THE PARTIES' MERITS ARGUMENTS IN DECIDING APPELLEE'S MOTION FOR SUMMARY JUDGMENT.

In the second of Appellant's two argument sections, she argues that the district court "misinterpreted law and facts when it granted Appellee's motion for summary judgment." AOB 35. This section consists of a discombobulated attack on the district court's reasoning, and again challenges the court's ability to even evaluate the facts before it. Ultimately, however, Appellant fails to raise any legitimate factual

48

or legal issues that would serve to undermine the district court's conclusions regarding Appellant's claims.

### A.    January 2015 Reassignment

Appellant begins by accusing the district court of "overlooking the implications of her January 11, 2015 transfer," when Appellant was reassigned to the CCD. Appellant maintains that this was a position "reasonably accommodating her MS and SD," and that, "[f]ollowing her transfer, [Appellant's] performance allegedly declined due to a lack of reasonable accommodations." AOB 35.

To the extent that Appellant is arguing that the district court failed to properly consider the transfer to the CCD as the withdrawal of a reasonable accommodation that could constitute a separate adverse act in support her claim of disability discrimination, as the court noted, Appellant "made clear at the 56(h) Conference that she was not relying on this reassignment as an adverse action," JA506 n.20, and that she instead was relying only on the three adverse actions she identified (a point which the court clarified twice during the hearing), *see* JA492-493; VA92 at 5-25; VA93 at 14-17. After making such an affirmative assertion, the district court was well within its rights to prohibit

Appellant from introducing additional adverse actions during the summary judgment briefing stage.

But even if Appellant had identified the January 2015 transfer to the CCD as an adverse act upon which she would base her discrimination claim, she ultimately would have been unable to do so, as any effort by Appellant to raise such a claim would fail on timeliness grounds. Federal employees seeking redress under federal anti-discrimination laws must initiate contact with an EEO counselor "within 45 days of the date of the matter alleged to be discriminatory or, in the case of a personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). When an employee fails to do so, "that individual's access to judicial remedies may be barred based on the failure to exhaust administrative remedies." *Almodovar v. Willkie*, No. 1:19-CV-00166-LEW, 2020 WL 7634586, at *6 (D. Me. Dec. 22, 2020), *aff'd sub nom. Almodovar v. McDonough*, No. 21-1061, 2021 WL 5879205 (1st Cir. Dec. 13, 2021). In this case, Appellant did not seek out EEO counseling in connection with her January 2015 reassignment to the CCD until January 2017, when she attempted to amend her original EEO complaint with several new allegations. VA71-83 ¶¶ 45, 88. In its

decision addressing her amendment request, ORM declined to accept her claim based on the January 2015 reassignment, concluding that it was untimely. JA506 n. 20; VA71-83 ¶¶ 45, 90; VA122-123. The district court was therefore correct to reject Appellant's belated attempt to raise a claim based on her January 2015 reassignment to the CCD.[11]

## B.    Testimony of Dr. Lash and Mr. Cochran

Next, Appellant accuses the district court of failing "to consider conflicting testimony of facts" that she argued in her opposition to Appellee's motion for summary judgment. AOB 37. In support, Appellant asserts that Dr. Lash "testified [Appellant's] full-time from-home telework was a reasonable accommodation request," while Mr. Cochran "testified it was not." AOB 37. Appellant argues that the district court improperly "gave preference to [Mr. Cochran's] testimony instead of [Dr. Lash's] when it made its decision to allow" Appellee's

---

[11] Although the court did not need to address Appellant's factual argument here, Appellant did not offer any evidence to support that the VA offered her the quality management role in 2009 to meet her temperature regulation needs. In fact, at her deposition, Appellant repeatedly denied that she had a reasonable accommodation on file while she held the quality management role. *See* VA97 50:4-23. Appellant also testified that there was no "withdrawal of an accommodation" when she moved to the CCD in 2015. VA97 49:17-51:4.

motion for summary judgment on Appellant's reasonable accommodation claim. AOB 37.

The problem with Appellant's argument is that there is no material conflict between the statements of Dr. Lash and Mr. Cochran. In her brief, Appellant cites at length from a statement Dr. Lash made to EEO Investigator Sheri Williams during Appellant's EEO investigation. *See* AOB 39-40 (JA143). Appellant reproduces eleven sentences from this statement in her brief, which are consecutive—save for three sentences that Appellant conspicuously elides. The portion of the statement that Appellant omits reads (in bold):

> I don't recall specifically who made the recommendation that the Complainant be approved to telework two days per week, instead of five. I'm pretty sure that I did not say "Five days is not reasonable. Why don't you try two?" **On the other hand if Mr. Cochran said, "Does it make sense to you to start with two and see how it goes?" I would have undoubtedly said "Yes." I do not recall who said what pertaining to the actual number of days that the Complainant would be permitted to telework on a trial basis.**

JA143 (emphasis added). The missing text that Appellant failed to include shows that, although Dr. Lash could not recall the particulars of the conversation in which he and Mr. Cochran ultimately arrived at the two-day-telework plan, Dr. Lash "undoubtedly" would have supported

that approach "to start with and see how it goes." In other words,
although it is unclear from their testimonies who was the first to
propose the two-day-telework trial period, both were in agreement that
it was a reasonable approach. The fact that Dr. Lash could not
remember "who said what pertaining to the actual number of days that
[Appellant] would be permitted to telework" in the call with Mr.
Cochran—over a year after the call took place—does not create a
material conflict between their two statements, given that Dr. Lash
testified that he would have supported the approach that the VA
ultimately took.

Additionally, Appellant's argument regarding the differing
opinions of Dr. Lash and Mr. Cochran assumes that Dr. Lash "agreed
with [Appellant's] claim that her request for full-time telework was a
reasonable request for accommodation." AOB 38. However, Appellant's
doctor did not specify in his note whether he was recommending full-
time telework or something short of that. *See* JA277. Accordingly, when
Dr. Lash reported that "the request was reasonable," this does not
necessarily mean he believed a request for *full-time* telework was

53

reasonable, because it was not clear that this is what Appellant's doctor recommended.

In any event, it does not matter whether Dr. Lash believed a full-time telework request was reasonable, because even assuming he did, it is clear from his statement that he *also* believed that the two-day-telework trial approach—whether recommended by himself or Mr. Cochran—was reasonable. JA143. Where there are multiple appropriate accommodations that are available, "normally the right to choose among effective remedial accommodations rests with the employer." *Hwang v. Kansas State University*, 753 F.3d 1159, 1163 (10th Cir. 2014); 29 C.F.R. pt. 1630, App. (noting in official interpretive guidance of regulations implementing equal employment provisions of the Americans with Disabilities Act, "the employer providing the accommodation has the ultimate discretion to choose between effective accommodations"). That the medical expert Appellee's Reasonable Accommodation Coordinator consulted with might have agreed that the accommodation Appellant desired was reasonable (had a proposal for such accommodation been put clearly before him) does not imply that the alternative accommodation that was proposed and ultimately

54

implemented by Appellant's employer was unreasonable, nor does it imply that the consulted medical expert believed it to be unreasonable.[12]

## C.    Melinda Leland Statement

Appellant next focuses on a statement of a VA employee, Melinda Leland, to argue that "the District Court overlooked evidence proving the VA did not reasonably accommodate [Appellant] with an ambient room temperature of 71° or less." AOB 41. Ultimately, however, this unsworn statement, nonspecific as to time and frequency, is far from sufficient to create a genuine issue of material fact regarding the adequacy of the reasonable accommodations provided to Appellant.

As an initial matter, Appellant did not raise the issue of Ms. Leland's statement before the district court in her opposition to Appellee's summary judgment motion. Nor did Appellant identify or cite to this record evidence in her opposing statement of material facts or a statement of additional facts pursuant to District of Maine Local Rule 56(c). *See* D. Me. Local R. 56(c) ("The opposing statement may contain

---

[12] Particularly given that the medical expert affirmatively indicated that he would have viewed a two-day work-from-home trial period to be reasonable.

in a separately titled section additional facts, each set forth in a separately numbered paragraph and supported by a record citation . . . ."). It is not the task of the district court "to scour the record in search of a genuine issue of triable fact," and it is reasonable for district courts to "rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Richards v. Combined Ins. Co. of Am.*, 55 F.3d 247, 251 (7th Cir. 1995); *see also Yanovsky v. JPMorgan Chase*, Civil Action No. 13-11426-RGS, 2014 WL 2986655, at *3 n.4 (D. Mass. July 2, 2014) (district court "has no independent obligation to ferret out facts that might defeat a motion for summary judgment"). Accordingly, Appellant cannot now fault the district court for allegedly overlooking evidence to which Appellant did not direct it.

Moreover, because Appellant did not raise Ms. Leland's statement in her opposition to Appellee's motion for summary judgment, nor make reference to it in her opposing statement of material facts or a statement of additional facts, the Court should decline to consider her argument that the statement creates a genuine issue of material fact that should have precluded summary judgment. *See Jackson v. Cal-*

*Western Packaging Corp.*, 602 F.3d 374, 380 (5th Cir. 2010) ("Because [Appellant] did not identify any such evidence in his opposition to summary judgment, we will not consider his argument in this regard.").

Even if the Court determines that Appellant has not waived her argument regarding the statement, there is a separate ground on which the Court should refuse to consider it. The statement, though signed, is both unsworn and not made under penalty of perjury. While this Court has held that unsworn statements *signed under penalty of perjury* "may be used, in lieu of a sworn statement or affidavit, to support or oppose a motion for summary judgment," *Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell v. Medfit Int'l, Inc.*, 982 F.2d 686, 689 (1st Cir. 1993), "statements not sworn to or subscribed under penalty of perjury are not admissible for summary judgment purposes," *Hudson v. Spencer*, No. 18-2069, 2021 WL 9494322, at *3 (1st Cir. Nov. 2, 2021) (citing Fed. R. Civ. P. 56(c)(4); Advisory Comm. Notes to R. 56, 2010 Amendments); *see also Ferrer Marrero v. Misey Restaurant, Inc.*, Civ. No. 17-1911 (MDM), 2019 WL 6833824, at *3 (D.P.R. Dec. 13, 2019) (holding that because witness's unsworn declaration was not signed under penalty of perjury, "the Court cannot consider it as evidence in

support of Plaintiff's opposition to both motions for summary judgment"); *Barth v. City of Peabody*, Civil Action No. 15-13794-MBB, 2017 WL 114403, at *2 (D. Mass. Jan. 11, 2017) (holding that because unverified complaint "was not signed under the pains and penalties of perjury, it cannot be considered part of the summary judgment record"). Had Appellant wished to use the substance of Ms. Leland's testimony, she could have obtained a declaration signed under the penalty of perjury from Ms. Leland and submitted it as part of the summary judgment record—assuming, of course, that Ms. Leland would have been willing to execute such a declaration.[13] Because Ms. Leland's statement was not signed under penalty of perjury, even had Appellant brought it to the district court's attention in her opposition to Appellee's motion, it would have been proper for the court to disregard it. *See generally Banks v. Deere*, 829 F.3d 661, 667-68 (8th Cir. 2016)

---

[13] Indeed, the fact that Appellant failed to obtain a sworn or subscribed declaration from Ms. Leland to attempt to counter Appellee's evidence that Appellant's temperature requirements were being met is perplexing—and perhaps telling. *See Warner v. Vance-Cooks*, 956 F. Supp. 2d 129, 157 (D.D.C. 2013) ("[T]he fact that the plaintiff did not produce any sworn testimony from [a witness] regarding this remark during extensive discovery in this case, or in opposition to the pending summary judgment motion, is an evidentiary deficiency that raises significant question about the reliability of this evidence . . . .").

(discussing in detail the prohibition on relying on unsworn and unattested statements at summary judgment, and collecting cases).

But even if the Court finds that Appellant did not forfeit her ability to challenge the district court's grant of summary judgment by failing to raise the issue of Ms. Leland's statement in opposition to Appellee's motion, and also that it would have been appropriate for the court to consider a witness statement not sworn to or subscribed under penalty of perjury, the statement ultimately does not create an issue of material fact. Ms. Leland stated that "[o]n the days the office was 75-76 degrees, Bonnie seemed to have some difficulty focusing and moving from one system to another. The days that it was 69-71 [degrees], she was able to quickly process her referrals and didn't need my assistance." JA267. But Ms. Leland provided no details regarding how many days she was with Appellant in Appellant's office,[14] how often the office was in the mid versus low seventies, nor any details regarding what time of day she was in Appellant's office or how long the air conditioner (which

---

[14] Ms. Leland indicates in her statement that she was asked to provide trainings to Appellant "in June and July," but correspondence between Appellant and Corey Vail establish that the training took place in July. JA303; *see also* VA115-116 ¶ 19.

Appellant controlled) had been on,[15] what the temperature was outside, and so forth. All Ms. Leland's unsworn, unattested statement provides is an acontextual snapshot of an indeterminate number of independent moments, recalled months after the events described allegedly took place. This evidence, even if deemed appropriate to consider by the Court, is not sufficiently probative to create a genuine issue of material fact. *See Carroll v. Xerox Corp.*, 294 F.3d 231, 236-37 (1st Cir. 2002) (evidence that is "'merely colorable or is not significantly probative' cannot deter summary judgment" (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986))); *Posadas de Puerto Rico, Inc. v. Radin*, 856 F.2d 399, 401 (1st Cir. 1988) (plaintiff failed to create genuine issue of material fact by only offering affidavit which was vague and conclusory).

Ultimately, Appellant's grievance with respect to her failure to accommodate claim appears to be that which is reflected in the heading of the portion of her brief addressing Ms. Leland's statement: that the

---

[15] Around this time, in correspondence with Appellant, Mr. Cochran recommended that Appellant "leave the A/C running overnight to keep the temperature down" in Appellant's office, VA106 ¶ 27, as Appellant had complained that her office was hot in the mornings if she left the air conditioner turned off overnight.

VA did not immediately allow Appellant to telework full time, five days per week. But as discussed *supra* in Part III.B, the Rehabilitation Act does not require the government to provide the accommodation of an employee's choice. *See Mercado Cordova v. Walmart Puerto Rico, Inc.*, 369 F. Supp. 3d 336, 355 (D.P.R. 2019) ("A claimant who establishes that he is a qualified individual with a disability in need of accommodation to perform the essential duties of his job is not entitled to the accommodation of his choice, but rather to reasonable accommodation.").

In reality, the VA offered multiple accommodations for Appellant's MS-related symptoms, all of which were reasonable. First, in response to Appellant's original July 2015 reasonable accommodation request, seeking temperature regulation under 72 degrees, the VA promptly sought out and identified Room 218E as an appropriate[16] office to which Appellant was moved; arranged for the installation of an appropriate electrical outlet; and installed an air conditioning unit. VA15-16 ¶¶ 32-

---

[16] It is undisputed that before selecting the new office, Mr. Cochran and Appellant's then-supervisor, Jody Kundreskas, spoke with employees who worked in Room 218E "to obtain their feedback regarding temperature fluctuations, and they advised that the temperature was usually around 69 to 70 degrees Fahrenheit." VA15 ¶ 31; VA101 ¶ 8.

35. When Appellant complained about her co-workers interfering with the temperature, the VA counseled those co-workers about the need to keep the room below 72 degrees and ultimately moved one of the co-workers to a different space. VA16-17, 24 ¶¶ 36-37, 55. The VA also purchased a thermometer for Appellant to track the temperature. VA23-24 ¶ 54.

When Appellant continued to express dissatisfaction with Room 218E (and despite Mr. Vail and Mr. Cochran's efforts that verified that the air conditioner did, in fact, cool the room appropriately, *see* VA23 ¶ 52; VA103 ¶ 17; VA113 ¶ 12), the VA again found a new air-conditioned space for Appellant—Room 313. VA24-25 ¶¶ 56-58. After Appellant again had conflicts with other employees and stopped even attempting to use the provided air conditioning unit, the VA again took prompt and reasonable action. First, it granted Appellant's telework request by approving two days of telework per week on a trial basis. VA28 ¶ 64. Second, it again found a new workspace for Appellant— Quarters 32, a private office that did not get direct sunlight and that

（

had an air conditioning unit that only Appellant controlled. VA28-30 ¶¶ 65-66, 68.[17]

Although it may not have been the accommodation that Appellant desired, it was perfectly reasonable for the VA to first move Appellant to new on-site, air conditioned office spaces in an effort to accommodate her temperature restrictions, and then to grant Appellant's telework request on a trial basis for up to two days a week, in light of the VA's contemporaneous effort to again find a new and private workspace for Appellant that gave her complete control over the temperature. Accordingly, it was appropriate for the district court to grant summary judgment on Appellant's reasonable accommodation claim. *See, e.g.*, *Yochim v. Carson*, 935 F.3d 586, 591 (7th Cir. 2019) (affirming district court's entry of summary judgment on failure to accommodate claim where no rational jury could find that the government failed to offer reasonable accommodations to plaintiff where it "either granted each of

---

[17] After Appellant moved to Quarters 32, Mr. Vail visited the office several times in August to ensure that the air conditioner was working appropriately, and it is undisputed that he was able to confirm during these visits that the air conditioner adequately cooled the space below 72 degrees, even when the outside temperature exceeded 90 degrees. VA33 ¶ 78; *see* JA480 n.2 (deeming Appellee's statement of fact at paragraph 78 admitted).

[Appellant's] requests or responded with a list of alternative options that reasonably addressed her needs"); *Howard v. United Parcel Serv., Inc.*, 101 F. Supp. 3d 343, 355 (S.D.N.Y. 2015) (employer was not required to provide "the accommodation plaintiff subjectively believes best serves his needs"; so long as the employer exercises appropriate discretion in determining the type of accommodation to provide, the accommodation is deemed reasonable as a matter of law), *aff'd sub nom. Howard v. United Parcel Serv.*, 648 F. App'x 38 (2d Cir. 2016).

### D.    Appellant's Disciplinary Record

Appellant takes issue with the district court's statement that in contending that she was terminated as a result of her disability, Appellant "ignores her problematic disciplinary record, which establishes a legitimate, nondiscriminatory reason for her termination." JA505; *see* AOB 42-43. In responding to the court's finding, Appellant again argues that OPM's determination that Appellant was entitled to FERS disability retirement "proved the VA's allegations of attendance and work discrepancies were immaterial." AOB 43. As discussed at length in Part II.B *supra*, (1) it was entirely unclear to the district court what evidence OPM considered and what factual determinations it

64

made regarding Appellant's disciplinary record,[18] and (2) even if OPM

*had* concluded that her disciplinary record was "immaterial," the court

would still have been obligated to conduct its own independent review of

the factual record developed by the parties, as OPM's decision on

Appellant's disability retirement application would have no collateral

estoppel effect on her Rehabilitation Act case in federal district court.

Accordingly, Appellant's disciplinary record was a relevant fact for the

court to consider, and Appellant was required to address it.

### E. Appellant's Failure to Respond to Appellee's Statement of Material Facts

Appellant raises the same jurisdictional and issue preclusion

arguments in response to the district court's striking of numerous

statements of fact proposed by Appellant and deeming admitted facts

proposed by Appellee to which Appellant failed to respond. AOB 44; *see*

---

[18] Appellant makes multiple references to apparent documents
submitted or statements made during the OPM disability retirement
application process. *See, e.g.*, AOB 44 ("The VA's response to
[Appellant's] application for disability retirement also proves . . . .").
Appellant does not provide any citations to material that was before the
district court that supports these statements, and accordingly they
should be disregarded.

JA480 n.2. This argument should be rejected for the reasons outlined in Part II.A-B and Part III.D *supra*.

## CONCLUSION

For the above-stated reasons, the judgment below should be affirmed.

Dated: April 24, 2023                  Respectfully submitted,

                                       DARCIE N. MCELWEE
                                       United States Attorney

                                  By: <u>/s/ James D. Concannon</u>
                                       James D. Concannon
                                       Assistant U.S. Attorney

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT,
TYPEFACE REQUIREMENTS, AND TYPE-STYLE
REQUIREMENTS**

1. This document complies with the word limit of Fed. R. App. P.
   32(a)(7)(B) because, excluding the parts of the document exempted
   by the Fed. R. App. P. 32(f), this document contains 12,991 words.

2. This document complies with the typeface requirements of Fed. R.
   App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P.
   32(a)(6) because this document has been prepared in a
   proportionally spaced typeface in Microsoft Word in 14-point
   Century Schoolbook font.

Dated: April 24, 2023

/s/ James D. Concannon
James D. Concannon

Attorney for Appellee Denis
McDonough, Secretary of the
U.S. Department of Veterans
Affairs

## CERTIFICATE OF SERVICE

I hereby certify that on April 24, 2023, I caused Appellee's Brief to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Robert F. Stone
rfstoneesq@comcast.net

/s/ James D. Concannon
James D. Concannon
Assistant U.S. Attorney